UNITED STATES of America, Appellee,

v.

Bradley Thomas JACOBSEN and Donna Marie Jacobsen, Appellants.

No. 81–2158.

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1982.

Decided July 27, 1982.

Rehearing and Rehearing En Banc Denied Oct. 14, 1982.

---

Friedberg & Peterson, Mark W. Peterson, Minneapolis, Minn., for appellants.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and BECKER,* Senior District Judge.

LAY, Chief Judge.

The fundamental issue in this appeal is whether federal drug agents' warrantless search of a package damaged in transit and inspected by employees of a private carrier was a violation of the warrant clause of the fourth amendment. We find the search unconstitutional.

The facts may be briefly stated. A supervisor for Federal Express, a private freight carrier, discovered a damaged package. Pursuant to company policy, a manager examined the contents of the package. The package consisted of a cardboard box wrapped in brown paper. Inside the box was a tube of duct tape. Inside the tube were four clear plastic bags, one inside the next, the innermost containing white powder. Federal Express employees, thinking the powder might be a controlled substance, notified the Drug Enforcement Agency. The manager then placed the bags back in the tube, leaving them visible from the tube's end, and placed the tube back in the box.

When DEA Agent Jerry Kramer arrived, the manager gave him the box. Kramer removed the tube from the open box, took the bags out of the tube, and extracted a sample of the powder. He thereafter conducted a field test on the powder which indicated the powder was cocaine. A short time later another sample was removed for further testing. The package was then rewrapped and Federal Express was directed to deliver the package to the addressee shown on the label. The package was addressed to Mr. D. Jacobs, 7300 West 130th Street, Apple Valley, Minnesota.

Drug enforcement agents determined Bradley Jacobsen lived at this address. He was mentioned in at least two previous

James M. Rosenbaum, U. S. Atty., Janice M. Symchych, Asst. U. S. Atty., D. Minn., Minneapolis, Minn., for appellee.

* William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation.

DEA investigative files relating to cocaine distribution. On the basis of this information and the field test, the drug enforcement agents obtained a warrant from a magistrate to search the defendants' home.

During the afternoon of May 1, 1981, DEA Agent James Lewis went to the Jacobsen home with the package. Dressed in ordinary street clothes, Lewis delivered the package to Donna Jacobsen, Bradley's wife. Lewis returned to the home approximately one hour later with eight to ten other officers. When Lewis identified himself, Bradley Jacobsen slammed the door, knocking Lewis down, and yelled, "It's the police—flush it." The officers forced the door open and searched the house. Cocaine traces, cocaine paraphernalia, and burned remnants of the package were found. The Jacobsens were arrested.

Defendants moved to suppress the evidence seized in their home as fruit of an illegal search of the package. Magistrate Floyd E. Boline recommended the motion be denied because the government's search did not exceed the scope of the private search. Over defendants' objection, the district court, Judge Harry H. MacLaughlin presiding, refused to suppress the evidence.

Bradley and Donna Jacobsen were tried before a jury and convicted on one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Bradley Jacobsen was also convicted of assault on a federal officer in violation of 18 U.S.C. § 111. This appeal followed entry of judgment.

We find that the evidence should have been suppressed and thus reverse the defendants' convictions for possession with intent to distribute cocaine and for conspiracy. We find the evidence sufficient to sustain a finding that Bradley Jacobsen assaulted a federal officer and thus sustain his conviction on that count.[1]

Since *Ex parte Jackson*, 96 U.S. 727, 24 L.Ed. 877 (1877), it has been the law that letters and sealed packages are protected from government inspection. The Jacobsens had a reasonable expectation that the contents of the package would remain private. *See Walter v. United States*, 447 U.S. 649, 651–52, 654, 100 S.Ct. 2395, 2398–99, 65 L.Ed.2d 410 (1980) (material carried by private carrier); *United States v. Van Leeuwen*, 397 U.S. 249, 251–52, 90 S.Ct. 1029, 1031–32, 25 L.Ed.2d 282 (1970). *Contra United States v. Barry*, 673 F.2d 912 (6th Cir. 1982) (Edwards, C. J., dissenting).[2]

The government argues that the fourth amendment does not forbid evidentiary use of the fruits of a private search conducted without government participation or encouragement. *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 2048–50, 29 L.Ed.2d 564 (1971); *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921). Defendants do not ar-

---

1. Bradley Jacobsen was sentenced to the custody of the Attorney General for 12 months on count I, plus a three-year special parole term; six months on count II, consecutive to the sentence on count I; and 12 months on count III, concurrent with the sentences for counts I and II. Donna Jacobsen was sentenced to the custody of the Attorney General for 12 months on count I, plus a special parole term of three years. She was also sentenced to a term of 12 months on count III, concurrent with the sentence on count I. Both of these sentences were suspended and she was placed on three years probation on condition that she serve a period of three months in a jail-type facility.

2. The government does not contest the standing of either Bradley or Donna Jacobsen to challenge the search of the package. The send-er and intended recipient of a package clearly have "an adequate possessory or proprietary interest in the ... object searched" to give them standing to question the propriety of its search or seizure. *See United States v. Haes*, 551 F.2d 767, 769–70 (8th Cir. 1977) (quoting *United States v. Kelly*, 529 F.2d 1365, 1369 (8th Cir. 1976)).

The package was addressed to Mr. D. Jacobs (the magistrate's report omits the "Mr." but the search warrant affidavit includes it). Mr. Jacobsen's first name is Bradley and Mrs. Jacobsen's first name is Donna. Given this ambiguity as to who the package was addressed to and the fact that it was sent to the address at which the Jacobsens were living as husband and wife, we conclude that both Jacobsens have standing to challenge the search.

gue that the Federal Express employees opened the package pursuant to any form of government directive. They assert, however, that the federal agents' search exceeded the scope of the private search.

In *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), a private carrier delivered a number of sealed packages to the wrong company. Employees of the company opened the packages and found boxes of film. The boxes contained suggestive drawings and explicit descriptions of the films' contents. An employee of the private carrier removed a reel of film and attempted to view it by holding it against a light, but he could not see its contents and no attempt was made to project the film. The employees contacted the FBI. Without obtaining a warrant, FBI agents took possession of the packages and screened the films.

The Court, in a five to four decision,[3] found the agents' actions violated the fourth amendment. The plurality held that the agents were lawfully in possession of the films, but should have obtained a warrant authorizing them to view the films. The screening of the films was an investigation which yielded incriminating evidence not disclosed on the films' containers. The viewing was deemed a search. *Id.* at 653–54, 100 S.Ct. at 2399–2400.

In *Walters*, the private search exposed the boxes to government scrutiny. The plurality held, however, that government scrutiny must be strictly confined to what is exposed by the private search. *Id.* at 656–57, 100 S.Ct. at 2401–02 (comparing limitation to that imposed by terms of warrant). Justice Stevens concluded:

> Prior to the Government screening, one could only draw inferences about what was on the films. The projection of the films was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search. That separate search was not supported

by any exigency, or by a warrant even though one could have easily been obtained.

*Id.* at 657, 100 S.Ct. at 2402 (footnotes omitted).

*See also United States v. Haes*, 551 F.2d 767, 771 (8th Cir. 1977).

In this case, the Federal Express employees removed the plastic bags from the tube, but did not remove or in any way analyze any of the powder; they subsequently replaced the bags back in the tube. The DEA agents removed the bags, took several samples of the powder, and subjected the samples to tests in order to determine their composition.

The private search in this case exposed bags of powder, but the Jacobsens' initial reasonable expectation that the package's contents would remain private was not entirely frustrated by the private search. In *Walter*, Justice Stevens wrote:

> The fact that the cartons were unexpectedly opened by a third party before the shipment was delivered to its intended consignee does not alter the consignor's legitimate expectation of privacy. The private search merely frustrated that expectation in part. It did not simply strip the remaining unfrustrated portion of that expectation of all Fourth Amendment protection.

*Id.* at 658–59, 100 S.Ct. at 2402–03 (footnotes omitted).

■ The DEA agents' extension of the private search precisely parallels that in *Walter*. In both cases, viewing the objects with unaided vision produced only an inference of criminal activity. In both cases, government agents went beyond the scope of the private search by using mechanical or chemical means to discover the hidden nature of the objects. The governmental activity represents a significant extension of the private searches because it revealed the content of the films in *Walter* and, here, the composition of the powder. In the ab-

---

**3.** Justice Stevens wrote the opinion for the Court, joined by Justice Stewart. Justice White wrote a concurring opinion which Justice Brennan endorsed. Justice Marshall concurred in the judgment.

sence of exigent circumstances, which the government does not allege, we hold the agents were required to obtain a warrant authorizing the taking of samples and analysis thereof.[4]

In this case, the government does not assert and we do not perceive any circumstances justifying the agents' failure to obtain a warrant authorizing examination of the contents of the package. *Cf. United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (automobile exception). As the Supreme Court stated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971):

> The warrant requirement has been a valued part of our constitutional law for decades, and it has determined the result in scores and scores of cases in courts all over this country. It is not an inconvenience to be somehow "weighed" against the claims of police efficiency. It is, or should be, an important working part of our machinery of government, operating as a matter of course to check the "well-intentioned but mistakenly overzealous executive officers" who are a part of any system of law enforcement.

*Id.* at 481, 91 S.Ct. at 2045 (footnote omitted).

*See also Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). We find that the agents' removal of the plastic bags, the taking of samples, and the chemical analysis of these samples constituted a violation of defendants' fourth amendment rights.

The fruits of this illegal search should have been suppressed. The finding of cocaine in a package being sent to the Jacobsens' home was the core of the affidavit which justified the issuance of the warrant to search the Jacobsens' home. The only other allegation contained in the affidavit is that Bradley Jacobsen is "mentioned in at least two investigative files for cocaine distribution." Without the statement that a test indicated the presence of cocaine in the powder, the affidavit does not provide probable cause to believe the Jacobsens possessed cocaine in their home. The search produced traces of cocaine, drug paraphernalia, and remnants of burned tape which matched that used to wrap the package. This evidence was improperly admitted. On this basis, we reverse the defendants' convictions on the drug related counts.

Bradley Jacobsen also appeals from his conviction for assaulting a federal officer, arguing the evidence was insufficient to support the verdict. He alleges he did not have the requisite specific intent to assault the officer. Viewing the evidence in the light most supportive of the verdict, we find reasonable minds could have concluded without a reasonable doubt that Bradley Jacobsen intended to assault the federal officer. *Cf. United States v. Manelli*, 667 F.2d 695 (8th Cir. 1981).

We reverse both defendants' convictions for possession with intent to distribute cocaine and conspiracy to distribute cocaine. We affirm Bradley Jacobsen's conviction for assault on a federal officer.

---

4. In almost identical circumstances, a panel of the Sixth Circuit, in *United States v. Barry*, 673 F.2d 912 at 920 (6th Cir. 1982) held that a warrant is not required to conduct chemical analysis of a sample of a seized substance. *See also People v. Adler*, 50 N.Y.2d 730, 431 N.Y. S.2d 412, 409 N.E.2d 888, *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980); *cf. United States v. Andrews*, 618 F.2d 646 (10th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980), (upholding without discussion search involving sampling and testing following more limited private search). The court in *Barry* attempts to distinguish *Walter* on the grounds that the films were protected by the first amendment and that the chemical test was not as significant an investigation as the view-

ing of a film. *Id.* 673 F.2d at 920. We disagree with this analysis. *Walter* rested on the fourth amendment, not the first amendment. The invasion of privacy and collection of inculpatory evidence involved in testing unidentified substances is parallel to the investigation and intrusion involved in screening a film. In *Adler*, the New York Court of Appeals dismissed the chemical analysis on the grounds that the content of the substance was already evident and the substance was legally in the possession of the police. This reasoning allows a finding of probable cause to eliminate the warrant requirement of the fourth amendment contrary to established principles of fourth amendment jurisprudence.

WILLIAM H. BECKER, Senior District Judge, concurring specially.

I concur in the opinion in this case, with serious reservations for the reasons stated in the dissenting opinion by Justice Blackmun of the Supreme Court of the United States in *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), because I believe it is more than possible that the rule enunciated in that opinion will become the majority rule in the future. The federal law in the field of unreasonable and therefore unconstitutional searches and seizures is being reexamined by the Supreme Court of the United States in a movement toward reexamination and restriction of the outer limits of the exclusionary rule. See *United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Even the author of the plurality opinion in *Walter v. United States, supra,* acknowledged in Part V of *United States v. Ross, supra,* that: "Nevertheless, the doctrine of *stare decisis* . . ." does not preclude a change in the law governing warrantless searches. Because the result of the majority opinion follows an interpretation of the current law in this field of constitutional law in this Court and of the current opinions of the Supreme Court of the United States, I concur with the reservations expressed above.