COMMONWEALTH vs. DONALD VARNEY.

Suffolk.  October 5, 1983. — February 1, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, & NOLAN, JJ.

*Constitutional Law,* Search and seizure.  *Search and Seizure,* Package,
   Glassine bag.  *Controlled Substances.  Practice, Criminal,* Argument
   by prosecutor.

Where employees of an air freight company, prompted by safety concerns,
   opened a package which had been delivered to them for shipment and
   discovered in the package glassine bags in which a white powder was
   visible, no Fourth Amendment rights of the addressee of the package
   were infringed by police officers who, without obtaining a warrant,
   conducted a field test to determine the chemical composition of the
   powder.  [35-42]
A prosecutor's agreement with defense counsel in a controlled substances
   case not to categorize the defendant as a drug dealer did not preclude
   the prosecutor from referring in closing argument to certain expendi-
   tures of money by the defendant exceeding his disclosed income, and
   from contending that the defendant had income from the sale of drugs,
   where defense counsel had sought to establish that the defendant was
   engaged in legitimate business and had introduced evidence opening
   the subject of the defendant's finances.  [43-45]
A defendant convicted of unlawful possession of more than 200 grams of a
   mixture containing cocaine, with an intent to distribute it, could not
   properly be sentenced to a term of ten years' imprisonment under G. L.
   c. 94C, § 32E (*b*)(3), which prescribes a "mandatory term of ten years
   in the state prison," but, on remand, was to be resentenced pursuant to
   general language in § 32E (*b*) providing for imprisonment for not less
   than three nor more than ten years.  [45-46]

INDICTMENT found and returned in the Superior Court
Department on October 14, 1980.

A pretrial motion to suppress evidence was heard by *Cam-
eron,* J., a District Court judge sitting under statutory au-
thority, and the case was tried before *Dwyer,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Thomas F. Heffernon* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.   After trial by jury, the defendant, Donald Varney, was convicted of unlawful possession with an intent to distribute more than 200 grams of a mixture containing cocaine, a Class B controlled substance.  G. L. c. 94C, § 32E (*b*) (3), inserted by St. 1980, c. 436, § 4.  Pursuant to § 32E (*b*) (3), Varney was sentenced to the Massachusetts Correctional Institution, Walpole, for a term of ten years.  Varney's sentence was stayed pending resolution of his appeal.  We transferred the case to this court on our own motion.

On appeal, the defendant argues error in the denial of his motion to suppress and in the prosecutor's summation.  Varney also challenges the constitutionality of G. L. c. 94C, § 32E (*b*) (3), as applied to him, and the validity of the sentence imposed pursuant to that section.  We affirm the conviction.[1]  However, for the reasons stated in *Commonwealth v. Marrone,* 387 Mass. 702, 705-707 (1982), we vacate the sentence and remand for resentencing pursuant to the general provision of G. L. c. 94C, § 32E (*b*).  See *Commonwealth v. Beverly,* 389 Mass. 866, 867 (1983).

1. *Motion to suppress.*  We summarize the facts.[2]  On September 15, 1980, one David Baldwin delivered a package to an air freight office at West Palm Beach International Airport.  The package was addressed to Donald Varney.  At the time Baldwin presented the package, the air freight office was very busy.  Baldwin, who appeared intoxicated,

---

[1] The defendant also was convicted of possession of marihuana.  See G. L. c. 94C, § 31.  This conviction was placed on file with the defendant's consent.  Thus, there are no issues before us on the marihuana conviction.  See *Commonwealth v. Delgado,* 367 Mass. 432, 438 (1975).

[2] The parties stipulated to the facts concerning the events in Florida. We also refer to some facts which, though not stipulated to, are undisputed and give a factual context to the motion.

called to one of the air freight handlers as though he were
acquainted with the employee and insisted repeatedly that
the package be placed on a specific flight to Boston. In re-
sponse to a question about the contents of the box, Baldwin
asserted that he was shipping neckties that were going to
revolutionize the tie industry. Baldwin asked to use the tel-
ephone behind the counter but kept dropping the receiver.
Baldwin paid for the delivery service and left the office.

About 6:30 P.M., when business at the freight office began
to slow down, the employees discussed Baldwin's behavior.
The employees recently had received a bulletin concerning
safety precautions, which instructed the employees to ask
for identification from persons sending packages who were
not regular customers. No such identification had been
obtained from Baldwin. Because of Baldwin's intoxicated
condition, his insistence that the package be shipped on a
particular flight, and his unexplained familiarity with the
freight handler's name, one of the freight office employees,
prompted by safety concerns, decided to open the package.
An inspection of the contents revealed glassine bags contain-
ing a white powdery substance and a green herb. The bags
were secured with towels. The employee, who suspected
narcotics, called his supervisor and requested that the police
be notified.

Responding to the supervisor's telephone call, an agent of
the Palm Beach sheriff's office came to the air freight office,
spoke to the employee, and inspected the package. The
agent conducted a field test on the powder and obtained
positive results for cocaine. On the basis of training and ex-
perience, the agent also determined that the green herb in
the package was marihuana.

After the drugs had been taken to the local police station
and weighed, the drugs were returned to the package, the
package was resealed, marked for identification, and placed
on the flight Baldwin had requested. The agent then tele-
phoned the Massachusetts State police and informed them
that a package destined for Logan Airport contained cocaine
and marihuana. The Massachusetts officers were told that

the package was addressed to one Donald Varney, had been delivered to an air freight service in West Palm Beach, Florida, by David Baldwin, and would arrive at Logan Airport on a scheduled flight at 12:30 A.M. on September 16.

At approximately 10 A.M. on September 16, Varney presented himself at the delivery service's counter, stated to an employee that he was looking for a package addressed to him, and recited the package's waybill numbers to the employee. The employee went into a separate room, ostensibly to search for the package, and, as prearranged, contacted the police. Approximately eight minutes later, a police officer brought the package to the airline terminal and gave it to the employee. The police officer remained outside while the employee took the package and brought it to the counter. The defendant presented his Massachusetts driver's license as identification and signed the airbill, which described the package's contents as neckties.

Taking the package, the defendant left the freight service's office, bypassed a bank of public telephones immediately outside the office, and walked 100 yards to another group of public telephones and made a telephone call. Varney then proceeded to his automobile. As he neared the automobile, he was approached by police officers, who, after giving the defendant the Miranda warnings, informed him that the police had reliable information that the package contained narcotics. The defendant disclaimed knowledge of the contents of the package and stated that he was picking it up for a friend, David Baldwin.

The defendant accompanied the officers to the State police office at the airport. He waited there while a search warrant was obtained. During this interval, the defendant placed a telephone call to his lawyer. An officer returned with the search warrant, and the package was opened in the defendant's presence. A field test conducted at the station revealed that a white powder found in the package was cocaine. The package also contained marihuana. The defendant was arrested and taken to the East Boston Division of the District Court for arraignment on charges of trafficking in cocaine and possession of marihuana.

Varney claims that the field testing of the contents of the package in Florida required a search warrant. Varney contends that the warrant obtained in Massachusetts, although facially valid, is predicated on the illegally obtained results of the Florida field test, and therefore the evidence must be suppressed. We do not agree.

The Commonwealth acknowledges that police must obtain a warrant if police intend to search any place in which the defendant has a legitimate expectation of privacy. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 104 (1980). We assume that, as the addressee of the package, the defendant had the requisite privacy interest in the package's contents at the time Baldwin delivered the package to the air freight service. See *Ex parte Jackson*, 96 U.S. 727, 733 (1878) (person sending letter or sealed package through the mail has privacy interest in contents); *United States* v. *Jacobsen*, 683 F.2d 296, 298 n.2 (8th Cir. 1982), cert. granted, 460 U.S. 1021 (1983) (sender and intended recipient of a package have interest sufficient to confer standing to contest search or seizure).[3]

The defendant's rights under the Fourth Amendment to the Constitution of the United States were not infringed by the private search of the package by the air freight service employees. *Burdeau* v. *McDowell*, 256 U.S. 465, 475 (1921). *District Attorney for the Plymouth Dist.* v. *Coffey*, 386 Mass. 218, 221 (1982). The issue raised by the defendant is whether police must obtain a search warrant before a white powder in a glassine bag may be tested to determine its chemical properties. We conclude that a search warrant is not required in those circumstances. The only thing "pri-

---

[3] That the defendant is charged with possession of the cocaine is no longer sufficient by itself under the United States Constitution to entitle him to challenge what he alleges was an illegal search of the contents of the bag in which the cocaine was found. *United States* v. *Salvucci*, 448 U.S. 83, 91-92 (1980) (overruling "automatic standing" doctrine of *Jones* v. *United States*, 362 U.S. 257 [1960]). The defendant has not raised the issue whether the "automatic standing" rule should be retained under our State Constitution. See *Commonwealth* v. *Podgurski*, 386 Mass. 385, 391 n.11 (1982), cert. denied, 459 U.S. 1222 (1983). We, therefore, leave that issue open.

vate" about the white powder at the time the police came into possession of it was the powder's chemical composition. We are unprepared to trivialize the concept of "privacy" by incorporating in it an alleged right to protect from inspection by government agents that which is lawfully obtained and appears to be contraband.[4]

The defendant's argument requires us to ignore the transparent quality of glassine and to conclude that the glassine bag or the white powder were "containers" which "concealed" their "contents" (cocaine). Were we to accept these characterizations, we would be holding that the police must obtain a warrant any time lawfully obtained evidence is to be subject to scientific testing. See *People* v. *Adler*, 50 N.Y. 2d 730, 737-738 n.4, cert. denied, 449 U.S. 1014 (1980). We think that such a result "imposes substantial burdens on law enforcement without vindicating any significant values of privacy." *Robbins* v. *California*, 453 U.S. 420, 429 (1981)

---

[4] It is settled that "contraband . . . may be seized by the police without a warrant whenever it is within plain view and in a place where the police have a right to be." *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 742-743 (1981). Accord *Payton* v. *New York*, 445 U.S. 573, 586-587 (1980). Although there must be probable cause to believe that the item seized is in fact contraband, *Sullivan* v. *District Court of Hampshire*, *supra* at 743, "[i]t is not necessary . . . that an officer have scientific proof that it is such." *Id.* at 744. On this record, it is clear that there was probable cause to seize the white powder in the glassine bag which was discovered in a package deceptively labeled as containing ties along with a bag containing what the police recognized as marihuana. Thus, the warrantless seizure of the glassine bag containing the contraband did not constitute a transgression of the defendant's constitutional rights.

We are cognizant that "an officer's authority to possess a package is distinct from his authority to examine its contents." *Walter* v. *United States*, 447 U.S. 649, 654 (1980) (opinion of Stevens, J.), citing *Arkansas* v. *Sanders*, 442 U.S. 753, 758 (1979), and *United States* v. *Chadwick*, 433 U.S. 1, 10 (1977). See *United States* v. *Bush*, 647 F.2d 357, 369 (3d Cir. 1981). Although "the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view," *United States* v. *Ross*, 456 U.S. 798, 822-823 (1982), the Fourth Amendment has never been read to preclude a warrantless examination of the contents of a container legitimately in the possession of the government officials when those contents are plainly visible through the container, see *id.* at 815; *Robbins* v. *California*, 453 U.S. 420, 427 (1981) (Fourth Amendment inapplicable to search of transparent container).

(Powell, J., concurring in the judgment), overruled on other grounds, *United States* v. *Ross*, 456 U.S. 798 (1982).

*Walter* v. *United States*, 447 U.S. 649 (1980), relied on by the defendant, does not compel a contrary conclusion. In *Walter*, the Supreme Court ruled[5] that the warrantless projection by FBI agents of films uncovered by a private search of sealed cartons was illegal, even though the films were turned over to the FBI in boxes covered with drawings and labels from which it could be inferred that the films were obscene. A plurality concluded that the consignor[6] of the cartons in which the films were shipped had a legitimate expectation of privacy in the contents, and that "[t]he private search merely frustrated that expectation in part." *Id.* at 659 (opinion of Stevens, J.). The projection of the previously unviewed films by government agents "was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search" conducted in violation of the warrant requirement. *Id.* at 657.

We believe that there is a pronounced distinction between the privacy interests implicated when government agents scrutinize previously unviewed films and those at stake when government agents conduct a field test upon a sample of

[5] *Walter* had no majority opinion. Justice Stevens wrote an opinion in which he was joined by Justice Stewart. In a separate opinion, Justice White, joined by Justice Brennan, agreed with Justices Stevens and Stewart that the FBI's warrantless projection of films discovered by private parties violated a legitimate privacy interest where such films had not been screened by the private parties, but concluded, contrary to Justices Stevens and Stewart, that the warrantless projection would be unlawful even if the private parties had projected the films. Justice Marshall concurred without opinion in the judgment. Justice Blackmun filed a dissent in which he was joined by Chief Justice Burger and Justices Powell and Rehnquist. *Walter*, which we in any event find to be distinguishable, therefore, does not control our decision. See *People* v. *Adler*, 50 N.Y.2d 730, 739-740 (1980) (Jones, J., concurring).

[6] Both *Walter* and *Ex parte Jackson*, 96 U.S. 727, 733 (1878), involved the privacy interests of a sender, rather than a recipient, of a sealed package. We do not, however, perceive the privacy interests of the recipient of such a package to be significantly different. See *United States* v. *Jacobsen*, 683 F.2d 296, 298 n.2 (8th Cir. 1982).

powder extracted from a glassine bag. As we read the *Walter* case, it stresses the fact that the films were "materials arguably protected by the First Amendment," *id.* at 655 (opinion of Stevens, J.), and notes that the warrant requirement was fashioned "against the background of knowledge that [an] unrestricted power of search and seizure could also be an instrument for stifling liberty of expression," *id.* at 655 n.6 (opinion of Stevens, J.), quoting *Stanford* v. *Texas*, 379 U.S. 476, 484 (1965), and *Marcus* v. *Search Warrant*, 367 U.S. 717, 729 (1961).

A white powder, unlike a film, is not a communicative medium. A warrantless scientific examination by government agents of white powder lawfully obtained and plainly visible may confirm the fact that it is contraband. That the test may confirm that the white powder is contraband does not, in our view, implicate any Fourth Amendment privacy interest. Nor do we think that such a test endangers any countervailing interest in free expression.[7] We also think that this distinction was implicitly recognized by the *Walter* plurality's reliance on Justice Stewart's concurring opinion in *Stanley* v. *Georgia*, 394 U.S. 557, 569 (1969). See *Walter* v. *United States, supra* at 653. That opinion reflected the view that the warrantless projection of the contents of films raised First and Fourth Amendment issues not presented by governmental inspection of contraband in plain view.[8] *Stanley* v. *Georgia, supra.*

---

[7] Because obscenity is a legal conclusion, rather than scientific fact, the likelihood that a warrantless search of films believed to be obscene will result in governmental intrusion on noncriminal private expression is substantial. See *Walter* v. *United States, supra* at 655 n.6 (twenty of twenty-five films projected by police presumed not obscene). By contrast, chemical analysis of a small portion of a powder erroneously believed to be a controlled substance is unlikely to impinge significantly on any expressive interest.

[8] In *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971), a plurality of four Justices concluded that the "plain view" exception to the warrant requirement is inapplicable "where the police know in advance the location of the evidence," *id.* at 470, but suggested that this inadvertence requirement is inapplicable to contraband, *id.* at 471, 472. See *United States* v. *Bellina*, 665 F.2d 1335, 1346 (4th Cir. 1981). See also *United States* v.

In circumstances similar to those in this case, two other courts have held that the principles espoused by the plurality in *Walter* do not require that the police obtain a warrant before testing a sample of what appears to be contraband uncovered by a private search. *United States* v. *Barry,* 673 F.2d 912, 920 (6th Cir.), cert. denied, 459 U.S. 927 (1982). *People* v. *Adler,* 50 N.Y.2d 730, 738 n.4, cert. denied, 449 U.S. 1014 (1980). See *United States* v. *Andrews,* 618 F.2d 646 (10th Cir.), cert. denied, 449 U.S. 824 (1980) (assuming without discussion that field test of white powder has no Fourth Amendment implications).

The only case to the contrary is *United States* v. *Jacobsen,* 683 F.2d 296 (8th Cir. 1982). In *Jacobsen,* the United States Court of Appeals for the Eighth Circuit concluded that "[t]he invasion of privacy and collection of inculpatory evidence involved in testing unidentified substances is parallel to the investigation and intrusion involved in screening a film." *Id.* at 300 n.4. For the reasons previously stated, we do not agree with this conclusion.[9] We affirm the judge's denial of Varney's motion to suppress.[10]

---

*Liberti,* 616 F.2d 34, 38 (2d Cir. 1980) (Newman, J., concurring), cert. denied, 446 U.S. 952 (1981). Cf. *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 743 n.8 (1981) (no need to invoke *Coolidge* plain view doctrine where "there was no intrusion into an area which was 'private' in a Fourth Amendment sense").

[9] Nor do we agree with the statement that permitting a warrantless field test in these circumstances "allows a finding of probable cause to eliminate the warrant requirement of the Fourth Amendment." *United States* v. *Jacobsen, supra* at 300 n.4. We conclude that there was no Fourth Amendment "search" because there is no legitimate expectation of privacy in visible white powder contained in a glassine bag. See *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741 (1981). If the government lawfully has obtained the plainly visible white powder, we do not believe the Fourth Amendment requires the police to obtain a search warrant before conducting a scientific test.

[10] Given our determination that the field test did not constitute a Fourth Amendment "search," we do not consider the Commonwealth's argument that, if the test was a "search," the fact that the powder was to be shipped on the 12:30 A.M. flight qualified as an exigency that excused compliance with the warrant requirement. We also need not address the contention that, in light of the information available to the police before the field test, the obtention of the warrant and the discovery of the evidence by Massa-

2. *The prosecutor's closing argument.* The defendant filed a motion in limine to preclude the Commonwealth from referring to the defendant as a drug dealer or from referring to any drug activities not in evidence. At a hearing on the motion, defense counsel voiced specific concern over the possibility that the prosecutor would comment on a 1975 arrest of David Baldwin for a narcotics violation. The judge, noting that reference to Baldwin's arrest would be impermissible, stated, "I don't think you [defense counsel] have any concern there, and I assume that the D.A. is not going to categorize any defendant as a drug dealer." After the prosecutor agreed with the judge's assessment, the judge stated that he would take no action on the motion.

At trial, the defendant offered evidence of his income and expenditures during the years preceding his arrest and indictment for cocaine trafficking. In the Commonwealth's summation, the prosecutor argued to the jury that the defendant's expenditures during the years preceding his arrest were inconsistent with his income during those years unless he had an undisclosed source of additional income. The prosecutor stated, "I contend to you, ladies and gentlemen, the other source of income the defendant has was narcotic drugs." The defendant objected and requested a mistrial or curative instruction on the ground that the prosecutor's statement was barred by the prosecutor's agreement not to refer to the defendant as a "drug dealer." The judge overruled the objection and denied both the motion for mistrial and the request for curative instruction.

The defendant asserts that the prosecutor broke his promise and therefore reversal is required. See *Commonwealth v. Burke,* 373 Mass. 569, 575 (1977); *Commonwealth v. Benton,* 356 Mass. 447 (1969). We are not persuaded, however, that by promising in advance of trial not to characterize Varney as a drug dealer, the prosecutor surrendered his right to argue to the jury that evidence introduced in large

chusetts police was inevitable, and that consequently the exclusionary rule should not be applied. See *Commonwealth* v. *Benoit,* 382 Mass. 210, 216-219 (1981).

part by the defense supported an inference adverse to the defendant. The defense chose to open up the issue of the defendant's life style by introducing evidence of Varney's income and investments. The defense pursued a line of questioning that could only be designed to establish that the defendant was a legitimate businessman, and that his assertion that he had no interest in the package he claimed at the airport was therefore plausible. During cross-examination, the prosecution asked questions aimed at rebutting that inference. In his closing argument, defense counsel portrayed the defendant as "a hard-working person who put together this business which he didn't make a lot of money at," but who got "things going and . . . made a fair living." The Commonwealth argued that the same evidence of finances indicated an undisclosed source of income.[11]

The defendant is not entitled to an interpretation of the pretrial agreement that would permit him to argue to the jury that he was a legitimate businessman who had nothing to do with narcotics, but would prohibit the Commonwealth from arguing to the contrary. The judge, who was in the best position to determine the exact nature of the

---

[11] The defendant alleges that the prosecutor's statement in his closing argument that Varney and Baldwin "were in the business of controlled substance, cocaine, a very substantial money-making business," also violated the pretrial agreement and was not a fair inference based on evidence. Varney also challenges as impermissible statements of personal opinion the prosecutor's assertions that "Jeff Cunningham" was "a contrived person created by the defendant," and that the defendant's mail order business was "a sham . . . a front, an air of legitimacy." The defendant neither objected to these statements at trial nor requested any curative instructions, and we review them only to see whether, individually or cumulatively, they created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Concepcion,* 362 Mass. 653, 654 (1972). We conclude that there was sufficient evidence to support the inference urged upon the jury by the prosecutor with regard to the nature of the relationship between Baldwin and Varney, as well as the inference that Cunningham was fictitious. Although the prosecutor's characterization of the defendant's mail order business may have been unjustified by the evidence, we do not think it probable that taken in the context of his entire argument it warrants reversal of the conviction on the ground of a miscarriage of justice. *Commonwealth* v. *Earltop,* 372 Mass. 199, 204 (1977).

prosecutor's pretrial commitment, rejected the defendant's claim that the closing argument ran afoul of that agreement. A prosecutor is free to "argue the evidence and the fair inferences which can be drawn from the evidence," *Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 (1978), and to suggest to the jury conclusions with an evidentiary foundation, *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316 (1980).[12]

3. *Unconstitutionality of G. L. c. 94C, § 32E (b).*[13] Stressing that there is "no evidence of prior cocaine offenses

---

[12] The defendant argues on appeal that the prosecutor's statement that "the other source of income the defendant has was narcotic drugs" was not an inference supported by the evidence. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). At trial, however, the sole ground for the defendant's objection to the statement was that it violated the pretrial agreement. "[T]he defendant is precluded from asserting on appeal a ground not properly brought to the attention of the trial judge." *Commonwealth* v. *Gullick*, 386 Mass. 278, 281 (1982). We are, in any event, unpersuaded that the prosecutor's statement exceeded the bounds of proper argument. The evidence as to the defendant's income and expenditures was sufficient to permit the jury to infer that he had an undeclared source of income; on the basis of the defendant's testimony that he had had repeated business-related telephone conversations with Baldwin, who mailed the package containing narcotics, the further inference that the undeclared income was drug related was permissible. Viewed separately or in conjunction with other issues not properly preserved for appeal, see note 11, *supra*, the prosecutor's statement did not create a substantial risk of a miscarriage of justice. Cf. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

[13] General Laws c. 94C, § 32E (*b*), inserted by St. 1980, c. 436, § 4, was rewritten by St. 1982, c. 650, § 11. Our discussion pertains only to § 32E (*b*), as it appears in St. 1980, c. 436, § 4, which reads as follows:

"Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute, dispense, or brings into this state 28 grams or more of cocaine or any mixture containing cocaine, shall be guilty of trafficking in cocaine and shall be imprisoned for not less than three years and not more than ten years in the state prison. If the quantity is:

"1. 28 grams or more, but less than 100 grams, such person shall be imprisoned for a mandatory term of three years in the state prison. A fine of not less than $2,500 and not more than $25,000 may also be imposed but not in lieu of the mandatory term of imprisonment, as so authorized;

"2. 100 grams or more, but less than 200 grams, such person shall be imprisoned for a mandatory term of five years in the state prison. A fine

or acts, no evidence of an ongoing criminal conspiracy, no evidence of sale or distribution and no evidence of large profit taking" on his part, Varney argues that G. L. c. 94C, § 32E (b) (3), in its application violates due process because it permits a first offender to be punished equally with "a repetitive drug dealer who trafficks cocaine at the rate of fifty pounds a month [and] who profits enormously from it." Because we conclude that subparagraph (3) suffers from the same defect as was found in § 32E (c) (3), see *Commonwealth* v. *Marrone*, 387 Mass. 702 (1982), we do not discuss Varney's constitutional claim. But see *Commonwealth* v. *Jackson*, 369 Mass. 904, 909 (1976). Compare *Solem* v. *Helm*, 463 U.S. 277 (1983).

In *Commonwealth* v. *Marrone*, 387 Mass. 702 (1982), we concluded that G. L. c. 94C, § 32E (c) (3), was flawed because it did not contain provisions for minimum and maximum sentences, the basic structure of sentencing in Massachusetts.[14] We adhere to the view that "the Legislature would [not] repeal by implication the Commonwealth's basic sentencing structure." *Id.* at 706. Accord *Commonwealth* v. *Beverly*, 389 Mass. 866, 869 (1983), and cases cited. Subparagraph 3 of G. L. c. 94C, § 32E (b), contains the very same defect we found in *Marrone.* Accordingly, we conclude that Varney must be resentenced under the general provision of G. L. c. 94C, § 32E (b), which establishes a minimum and maximum sentence. See *Commonwealth* v. *Marrone, supra* at 707.[15] The conviction is

---

of not less than $5,000 and not more than $50,000 may also be imposed but not in lieu of the mandatory term of imprisonment, as so authorized;

"3. 200 grams or more, such person shall be imprisoned for a mandatory term of ten years in the state prison. A fine of not less than $2,500 and not more than $200,000 may also be imposed but not in lieu of the mandatory term of imprisonment, as so authorized."

[14] In this case, unlike *Marrone*, Varney's sentence does not exceed the maximum term provided by statute. There is, however, no minimum sentence provided by G. L. c. 94C, § 32E (b) (3).

[15] The defendant suggests that G. L. c. 94C, § 32E (b), permits a ten-year sentence to the Massachusetts Correctional Institution, Concord. The defendant's sentence is governed by G. L. c. 94C, § 32E (b), not

affirmed, the sentence is vacated, and the case is remanded to the Superior Court for resentencing.

*So ordered.*

---

G. L. c. 94C, § 32E (*b*) (3).  Thus, the judge has the usual discretion to impose a sentence within the legislative limits and the general rules governing sentencing in Massachusetts.  See *Commonwealth* v. *Hayes,* 372 Mass. 505, 510-512 (1977).