Cratsley, J.
I.INTRODUCTION
Defendant Richard Sjoberg (Sjoberg) has been indicted for violating the Massachusetts statute prohibiting secret electronic eavesdropping, G.L. c. 272, §99. The indictments stem from Sjoberg’s videotaping of himself and two different women having consensual sex in the bedroom of Sjoberg’s home. Sjoberg allegedly did not inform the women that they were being videotaped, and, thereby, their conversations recorded. Defendant has filed a motion to dismiss the indictments on the grounds that the Massachusetts statute prohibiting eavesdropping is preempted by federal statute and/or is unconstitutional. Defendant has also filed a motion to suppress the contents of the videotape arguing that the police did not seize it in the course of a lawful search or pursuant to a search warrant. Based upon the credible evidence and arguments presented during the hearing, and based upon the arguments presented in the parties' briefs, this Court makes the following findings of fact and rulings of law:
II.FINDINGS OF FACT
Richard Sjoberg[1] and Carrie Hayes lived together for approximately seven months, from January 1991 to August 1991. On August 7, 1991 Ms. Hayes found a videotape in their shared bedroom and viewed part of it. The portion of the videotape Carrie Hayes saw depicted Mr. Sjoberg and another woman having sex and included their conversations. Ms. Hayes confronted Mr. Sjoberg with the videotape and an argument ensued. During the argument Mr. Sjoberg broke the plastic casing surrounding the tape attempting to render it unwatchable. Later that evening Ms. Hayes, after repairing the damage to the tape, watched another portion of the tape. The pair fought again and Mr. Sjoberg again attempted to disable the videotape, this time breaking the casing entirely and removing the film from its plastic cassette. Ms. Hayes moved out that night, taking the remains of the tádeotape with her.
On or about August 8, 1991 Carrie Hayes telephoned the woman who Ms. Hayes had recognized on the videotape. She told Ms. Hayes that she had not known that Mr. Sjoberg had videotaped them having sex. The two arranged a meeting at which time Ms. Hayes gave the videotape to the other woman.
After surrendering the tape, Ms. Hayes told her parents about the videotape. Her father, Richard Hayes,[2] was concerned that the tape might contain video of Carrie Hayes having sex with Richard Sjoberg. Officer Hayes contacted the other woman and asked her to surrender the videotape to him, which she did. Officer Hayes then gave the tape (which was still broken) to Weymouth Police Chief James Thomas.
Without obtaining a warrant the Weymouth police had the tape repaired and viewed it in its entirety. The police discovered that the tape contained another sexual episode between Mr. Sjoberg and yet another woman. This recording was also apparently made without that woman’s knowledge or consent and included conversations.
III.DISCUSSION A Defendant’s Motion to Dismiss 1. Preemption by federal statute
Under the federal Constitution’s Supremacy Clause, federal statutes may preempt and invalidate state law. U.S. Const. Art. VI; Gibbons v. Ogden, 22 U.S. 1 (1824). The federal statute pertinent to this case is Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§2510-2520 (“Title III”). *6 Title III regulates electronic surveillance and explicitly allows for concurrent state regulation. 18 U.S.C. §2516(2).[3] Congress intended, and courts agree, that states may adopt standards more restrictive than those in the federal statute, but may not adopt standards less restrictive than those in Title III. Commonwealth v. Vitello, 367 Mass. 224, 247 & n.10 (1975). The Vitello Court found that the warrant provisions of the Massachusetts statute met Title Ill’s standards and that the state law was “not repugnant to the provisions of the Federal Act and is accordingly not preempted." Id. at 249.
Defendant’s argument that Title III preempts the Massachusetts statute centers on two differences between the two laws. First, Title III allows for “one-party consent”; eavesdropping is not illegal under the federal law if one party to the conversation consents to the recording. 18 U.S.C. §§2511 (2)(c), (d). By contrast, the Massachusetts statute requires “all-party consent"; eavesdropping is illegal (with some exceptions) unless all parties consent to the recording. G.L. c. 272, §99.[4] Second, Title III makes secret recordings illegal when they are done for a criminal or tortious purpose. 18 U.S.C. §2511(2)(b). Under the Massachusetts statute, there is no explicit mention of criminal or tortious purpose.
If Massachusetts’ all-party consent provision is repugnant to its federal counterpart, then Title III preempts it and renders it invalid. As noted above, Vitello holds thatTitle III allows “more restrictive” state statutes. 367 Mass, at 267. In the context of protecting a defendant’s Fourth Amendment rights, courts have suggested that the “more restrictive” statute must be more protective of the criminal defendant’s privacy. United States v. McKinnon, 721 F.2d 19, 21 n.1 (1st Cir. 1983). By contrast, the court in Vitello focused more broadly on whether the “more restrictive" statute was more protective of a general right to freedom from illegal eavesdropping. 367 Mass. at 262.[5]
Clearly, both Congress and the Massachusetts Legislature intended to protect citizens from an Orwellian world of constant, creeping surveillance. Both laws reach illegal spying by government officials, police, next-door neighbors, and intimate sexual partners. With Vitello as guidance this Court finds that the Massachusetts all-party consent requirement is more restrictive than the federal statute in that it is more protective of a general public interest in being free from eavesdropping. Although defendant’s interest in making private secret video recordings may be compromised, the public interest in being protected from such unconsented recordings greatly outweighs these rights. Therefore the two statutes are not at cross purposes.
Defendant also argues that the absence of the “criminal purpose” element from the Massachusetts statute is evidence of a conflict with Title III and that the Massachusetts statute is therefore preempted. Defendant suggests that Title Ill’s criminal purpose element is separate or distinct from the act of recording itself. In support of this argument, Defendant cites Boddie v. American Broadcasting Co., 731 F.2d 333, 339 (1984).
This Court disagrees. A general criminal intent is envisioned in the Massachusetts statute. G.L. c. 272, §99(C).[6] Defendant’s argument splits hairs. Indeed, the analysis in Boddie could easily be applied to this case without requiring any disparate result. Boddie instructs that Title III requires an act (the recording) and an illegal, tortious or injurious purpose (for example, intent to use the recording to blackmail someone). Likewise, the Massachusetts statute requires an act (the recording) and willfulness (for example, intentionally failing to disclose that a recording is being made). Although the Massachusetts statute formulates the intent requirement somewhat differently than Title III, it does not rise to the level of being so contrary to Title III that preemption is called for. Indeed, under Vitello, the Massachusetts intent requirement is simply more restrictive than the Title III intent requirement and therefore permissible. The federal statute does not preempt the Massachusetts statute.
2. Vagueness
A law is void for vagueness if persons of common intelligence must necessarily guess at its meaning and differ as to its application. Smith v. Goguen, 415 U.S. 566, 572 n.8 (1974). Vague laws compromise due process rights because they do not put individuals on notice of the conduct they proscribe and because of the possibility of arbitrary and discriminatory enforcement. Grayned v. Rockford, 408 U.S. 104, 108-09 & n.4 (1972); Papachristou v. Jacksonville, 405 U.S. 156, 162 (1972); Commonwealth v. Jasmin, 396 Mass. 653, 655 (1985). The degree of vagueness permissible varies; less vagueness is allowed in cases where constitutional rights are implicated. Jasmin, 396 Mass. at 655.
Proscribed conduct need not be defined with mathematical precision. Grayned, 408 U.S. at 110; Commonwealth v. Bohmer, 374 Mass. 358, 372 (1978). It must, however, contain a “comprehensible normative standard." Commonwealth v. Orlando, 371 Mass. 732, 734 (1977). In determining whether an allegedly vague statute fosters arbitrary enforcement the Supreme Court looks to whether it permits a “standardless sweep [that] allows police! ], prosecutors, and juries to pursue their personal predilections." Smith v. Goguen, 415 U.S. at 575.
The defendant does not challenge a specific part or parts of the statute for vagueness. Rather, he argues that the sections which create the criminal offenses with which he is charged are unconstitutionally vague[7] or that the statute creates a danger of arbitrary or discriminatoiy enforcement.
*7 This law is not unconstitutionally vague. In fact, it is quite clear. The law’s preamble states, “[M]odern electronic surveillance devices pose grave dangers to the privacy of all citizens of the commonwealth. Therefore the secret use of such devices by private individuals must be prohibited.” G.L. c. 272, §99(A). Subsection (B)(4) defines “interception” to mean “to secretly hear, secretly record or aid another to secretly hear or secretly record the contents of any wire or oral communication . . .” Both “wire” and “oral” communication are separately defined in the statute. The statute sets out criminal penalties for persons who intercept or attempt to disclose the interception of oral communications. G.L. c. 272, §§99(C)(1), (c)(3). The law clearly makes the secret recording and attempted disclosure of oral communications a crime. Id. In a case involving virtually identical facts, the California Court of Appeals found no vagueness problem, stating, “There can be little doubt defendant knew that in recording the sexual activity without the woman’s consent, he was violating her right of privacy . . . [This] interpretation is consistent with the legislature’s intent to protect individual privacy.” People v. Gibbons, 214 Cal.App.3d 1204, 1211 (1989). For these reasons the law sufficiently warns reasonable persons of what conduct is illegal.
Nor does the statute create a danger of arbitrary or discriminatory enforcement. The statute contrasts starkly with the laws our Supreme Judicial Court has previously found void for vagueness. For example, in Commonwealth v. Williams, 395 Mass. 302, 306 (1985), the Court held that a city ordinance criminalizing sauntering and loitering was unconstitutionally vague based in part on the danger of arbitrary enforcement: “[T]he ordinance fails to set minimal guidelines to govern law enforcement. Police do not have a standard by which to distinguish between the lawful conduct of mere sauntering and loitering and that which escalates to obstructing travelers.” Id. The statute at issue here contains no such infirmity. The Legislature stated clearly what is illegal, defined terms and created exceptions. As with all statutes, it may fall to police, juries and judges to make judgment calls when enforcing the statue. Even so, this statute is not of the ilk of the ordinance considered in Williams, where the distinction between legal and illegal conduct was so blurred that police could arrest virtually anyone standing on the street.
3. Overbreadth
Defendant also challenges the Massachusetts statute on the grounds that its overbreadth impedes First Amendment rights to freedom of expression, free press and privacy. Defendant asserts this argument on behalf of others whose First Amendment rights may be chilled by the threat of criminal prosecution under this Massachusetts wiretap statute.
Generally, an individual may not challenge a law on the ground that it may be unconstitutionally applied to another. Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973). However, since the First Amendment needs “breathing space" to protect society’s right to free expression, this standing requirement is relaxed for such challenges. Id. at 611-12. In order for over-breadth doctrine to be employed, the deterrent effect on protected expression must be real and substantial and the statute must not be readily subject to a narrowing construction. Erznoznik v. Jacksonville, 422 U.S. 205, 216 (1975).
The potential prohibition of one form of protected activity is not substantial overbreadth. Marshfield Family Skateland v. Marshfield, 389 Mass. 436, 445, cert. dismissed, 469 U.S. 987 (1983). Similarly, a statute is not overbroad if its legitimate reach dwarfs its arguably impermissible applications. New York v. Ferber, 458 U.S. 747, 773 (1982). Rather, a statute is unconstitutionally overbroad when it “criminalizes conduct which virtually every person would regard as lawful.” Commonwealth v. Oakes, 401 Mass. 602, 605 (1988), vacated on other grounds, 492 U.S. 571 (1989). Overbreadth doctrine is strong medicine and is used sparingly and only as a last resort. Broadrick, 413 U.S. at 613.
Based on these guidelines, this Court finds that the Massachusetts electronic surveillance statute is not unconstitutionally overbroad. First of all, defendant’s assertion that the statute implicates the right of free expression is misplaced. Defendant suggests that the law would chill the production of television shows such as “Candid Camera” and “Totally Hidden Video” where hidden videocameras record persons and their speech without their knowledge. The importance of such “expression" must be weighed against countervailing values. See, e.g., Bohrner, 374 Mass, at 374-75 (comparing the need for freedom of expression in schools to the importance of an atmosphere conducive to education). Here there is a countervailing value which defendant’s argument ignores — the privacy of the person who is secretly recorded. Amateur videocamera owners may surely have a First Amendment right to express themselves by capturing the foibles of an unsuspecting subject. At the same time the secretly recorded person has an interest in controlling information about herself and her conversations. While the interests of the subject of the secret recording may be less compelling in some instances (the person secretly recorded at a shopping mall or in a public park) and more compelling in others (the person secretly recorded during sexual intercourse), they are nonetheless real and their protection is within the legitimate reach of the Legislature. On balance, the First Amendment right to freedom of expression is not substantially curtailed by this statute.
*8 For similar reasons, defendant’s arguments that the Massachusetts statute chills the First Amendment’s protection of a free press are not persuasive. Defendant correctly points out that the Massachusetts statute would prohibit investigative news shows such as “60 Minutes" and others from using hidden videocameras to expose public health dangers, corruption and fraud. Again, however, the interest in maintaining a free press must be weighed against the countervailing value of individuals’ rights to be free from surreptitious recording of their words and actions. Bohmer, 374 Mass, at 374-75. While it may be that the Massachusetts statute technically restricts the press from using hidden cameras or tape recorders in gathering information, and certainly means that they do so at their peril, the law does not create a blanket prohibition on investigative reporting. The law allows journalists to investigate stories “under cover” and to expose corruption and the like in their stories.
Moreover, the potential for overbreadth in this area is not so substantial that it merits an invalidation of the statute on overbreadth grounds. Erznoznik, 422 U.S. at 216. The Massachusetts statute does not criminalize conduct which virtually every person would regard as lawful. Oakes, 401 Mass. at 605. As noted above, legislative bodies in at least nine states besides Massachusetts regard secret recording as unlawful. Therefore the statute’s legitimate reach (protecting citizens from secret recordings of their everyday private affairs and conversations) dwarfs its arguably impermissible application (the curtailment of First Amendment free press rights). Ferber, 458 U.S. at 773.
Defendant’s final overbreadth argument is that the statute compromises a right to privacy. Since the defendant only has standing for overbreadth purposes to challenge the statute’s reach with respect to the First Amendment, Broadrick, 413 U.S. at 611-12, he is presumably arguing a First Amendment violation of individual privacy rights.
Defendant’s argument relies heavily on Stanley v. Georgia, 394 U.S. 557, 565 (1969), in which the Supreme Court held that the First Amendment protects an individual’s right to privately possess pornography. Defendant basically argues for an extension of Stanley to protect not only the possession and viewing of pornography, but also the use of video or tape recorders to record the events which transpire inside one’s household.
Defendant surely has a First Amendment right to possess virtually any printed or recorded matter in his home, including videotapes of his own sexual relationships with partners who have consented to being recorded. However, no such right is compromised by the Massachusetts statute at issue here. Nothing in the statute prohibits the possession of such videotapes, unless the tapes were created in violation of the statute. While this Court agrees that defendant has a valid privacy right as to many of his own activities in his own home, it does not follow that he has a right in Massachusetts to secretly record those activities and conversations without the consent of those he is recording.
B. Defendant’s Motion to Suppress
Defendant has also moved to suppress the contents of the video tape, claiming that the police’s warrantless viewing of the tape constitutes a constitutionally unreasonable search. A search under the Fourth Amendment is any invasion of a citizen’s actual and reasonable expectation of privacy. Katz v. United States, 389 U.S. 347 (1967). While a person has reasonable expectation of privacy in his belongings, his constitutional rights do not protect him from unreasonable searches and seizures by private citizens. Burdeau v. McDowell 256 U.S. 465, 475 (1921); District Attorney for the Plymouth Dist. v. Coffey, 385 Mass 218, 221 (1982). Carrie Hayes and the other woman both acted as private citizens in obtaining the tape and surrendering it to the police. Since there was no evidence presented at the hearing on the motions to suppress and to dismiss that either Ms. Hayes or the other woman were acting at the direction of the police, their search and seizure did not compromise defendant’s constitutional rights.
Turning to the question of whether the police’s warrantless viewing of the surrendered videotape was illegal, three cases offer guidance. In Walter v. United States, 447 U.S. 649, 651 13 (1980), a private business gave the police videotapes which had been incorrectly delivered to its offices. The police apparently suspected that the tapes were obscene because of their labels and titles. Id at 652. In a plurality opinion the Supreme Court stated that the scope of a warrantless police search must not exceed the scope of the private search which it follows. Id at 657. Thus the Court reasoned that, “the [police] projection of the films was a significant expansion of the search that had been conducted previously by a private party . . ."Id The Court did not reach the issue of whether the government would have been required to obtain a warrant had the private party already viewed the tapes. Id at n.9. At least two justices felt that the government would have been required to obtain a warrant before screening the tapes, even if the private party had viewed them. Id at 662 (White, J. and Brennan, J. concurring).
Since the decision in Walter, both the Supreme Court and our Supreme Judicial Court have held that police, without obtaining a search warrant, may legally test contraband obtained by private citizens. United States v. Jacobsen, 466 U.S. 109 (1983); Commonwealth v. Varney, 391 Mass. 34, 41-42 (1984). In both cases the police tested a small amount of a white powder they believed to be cocaine. Jacobsen, 466 U.S. at 112; Varney, 331 Mass. at 36. The Jacobsen Court reasoned that the warrantless police search had not *9 exceeded the scope of the private search because it did not yield information that had not been known previously, 466 U.S. at 120; that there was no societal interest in protecting the private mailing of cocaine, Id. at 123; and that the police appropriation of the property involved (the cocaine which the police tested) was minimal. Id. at 125.
Similarly Varney allowed the police search of a privately seized package containing drugs. The Varney Court distinguished the Waiter-based First Amendment and privacy grounds, finding that the limited police search of the drugs outweighed any of the defendant’s free expression interests as set forth in Walter. 391 Mass, at 41.
Based on these cases this Court finds that the videotape should not be suppressed. Carrie Hayes, a private citizen, viewed the tape and heard the voice of at least one woman on it before it was ultimately turned over to the police. Thus the police viewing of it, even without a warrant, did not exceed the scope of Carrie Hayes’s search, or yield any significant information of which the police were not already aware. Walter, 447 U.S. at 657; Jacobsen, 466 U.S. at 120. Although the police watched and heard more of the videotape than Carrie Hayes had screened, this Court finds that the information which the police obtained through the warrantless viewing was not a significant expansion of the search which Carrie Hayes initiated. Defendant’s property interest in the videotape was not compromised by the police viewing and listening to it. Id. at 125. Further, as is discussed above,, any First Amendment right which defendant may have in the tape is clearly outweighed by a societal interest in freedom from unconsented electronic surveillance. Id. at 123; Varney, 391 Mass. at 41.
ORDER
For the reasons stated above, defendant’s motion to dismiss is DENIED and defendant’s motion to suppress is DENIED.

At the time of the events which gave rise to this action, Mr. Sjoberg was a police officer with the Weymouth Police Department. None of the crimes with which he is charged, however, are related to his duties as a police officer.

Richard Hayes is a Weymouth police officer.

Section 2516(2) provides, in part “A State court judge of competent jurisdiction ... may grant in conformity with [Title III] and with the applicable State statute an order authorizing [electronic surveillance] . . ." (Emphasis added.)

Notably, at least nine states have similar all-party consent requirements. See, e.g., Calif. Penal Code §§630 to 637.3; Del. Code Ann. tit. 11, §§1335-36; Fla. St. Ann. ch. 47, §§934.01 to 934.10; III. St. Ann. ch. 38, §§14-1 to 14-9; Md. Cts. & Jud. Proc. Code Ann. §§10-401 to 10-412; Mont. Code Ann. §§45-8-213; N.H. Rev.Stat.Ann. §§570-Al to 570-A: 11; Pa.St.Ann. tit. 18, §§5701 to 5726; Wash. Rev. Code is 9.73.030 to 9.73.140.

 The Vitello Court states, “Most probably the requirement of minimization seeks to remedy the infirmity ... at issue in Berger v. New York wherein ‘the conversations of any and all persons coming into the area covered by the device will be seized indiscriminately and without regard to their connection with the crime under investigation.' [T]he purpose ... is to limit the intrusion so that communications not otherwise subject to interception will not be indirectly monitored, causing a serious interference with rights of privacy." Id. (citation omitted).

 For example, Section 99(C)(1) provides, in part, “[A]ny person who miíí fuüy commits an interception ... of any wire or oral communication shall be fined not more than ten thousand dollars, or imprisoned in the state prison . . ." (emphasis added). Other subsections include similar intent requirements.

Defendant is charged with two counts of violating G.L. c. 272, §99(C)(1) (willful interception of oral communication) and one count of violating §99(C)(3) (willful attempt to disclose contents of interception).