JAMES R. SULLIVAN vs. DISTRICT COURT OF HAMPSHIRE
& others.[1]

Hampshire.  September 18, 1981. -- December 16, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

Constitutional Law, Search and seizure, Use in civil proceeding of illegal-
  ly obtained evidence. Public Employment.  Search and Seizure, Ex-
  pectation of privacy, Probable cause. Probable Cause.

A special police officer employed as a guard at a State hospital acted law-
  fully in removing a hospital employee's jacket which had been left be-
  hind in a canteen area of the hospital used routinely by others, and the
  subsequent discharge of the employee on the basis of marihuana ob-
  served in an open pocket of the jacket violated none of his constitu-
  tional rights, as he had no reasonable expectation of privacy in the
  area where the jacket was found.  [739-742]
A special police officer, suspecting the presence of marihuana, had prob-
  able cause to seize a plastic bag containing "a green, grass-like sub-
  stance," which he observed in the open pocket of a jacket left behind
  by a State hospital employee in a canteen area of the hospital, irrespec-
  tive of whether the officer had previously acquired the ability to
  recognize marihuana as such.  [742-745]


CIVIL ACTION commenced in the Superior Court Depart-
ment on November 14, 1978.

The case was heard by Smith, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

Richard M. Howland for the plaintiff.

[1] The other defendants are the five members of the Civil Service Com-
mission, Northampton State Hospital, the superintendent of the hospital,
and the acting superintendent at the time of the plaintiff's discharge.

*William L. Pardee,* Assistant Attorney General, for the defendants.

LYNCH, J.   In August of 1972, the plaintiff was discharged from his position as a nurse at Northampton State Hospital after he was accused of bringing marihuana to work.   This appeal, which we transferred here on our own motion, is the last stage in a long series of hearings and appeals stemming from this discharge.

We review briefly the procedural history of the case. On August 15, 1972, the plaintiff was convicted in the District Court of Hampshire under G. L. c. 94C, §§ 31 & 34, for possession of a certain quantity of marihuana found on the grounds of the Northampton State Hospital on August 8. He was placed on probation for one year.   An appeal was filed but apparently later withdrawn.   On August 24, 1972, the plaintiff was dismissed from his job by the acting superintendent of Northampton State Hospital (appointing authority) after the hearing required by G. L. c. 31, § 43(*a*), as it then read.[2]   He appealed his dismissal to the Civil Service Commission (commission) pursuant to G. L. c. 31, §§ 43(*b*) & 46A.   A hearing was held before a hearing officer, who subsequently issued a report recommending that the plaintiff's discharge be upheld.[3]   The commission voted to accept the hearing officer's report and affirmed the appointing authority's discharge of the plaintiff.   The plaintiff then filed a complaint in the District Court of Hampshire seeking review of the commission's decision pursuant to G. L. c. 31, § 45.   The District Court judge found prejudicial error in certain of the hearing officer's rulings and remanded the case for the taking of further testimony.

---

[2] Chapter 31 was rewritten in 1978. See St. 1978, c. 393, § 11. Reference in this opinion will be to the version of the statute in effect before 1978.   The 1978 amendments did not effect any significant substantive changes in the relevant statutory sections.

[3] The record on appeal does not include the hearing officer's report, but the commission's action on it demonstrates that it was adverse to the plaintiff.

A hiatus of over a year ensued at the end of which the plaintiff brought a civil action in the Superior Court in Hampshire County against the commission and the appointing authority seeking damages and reinstatement to his position at the hospital. A judge of the Superior Court denied the commission's motion to dismiss and ordered the commission to proceed with the additional hearings already ordered by the District Court judge. On March 19, 1976, further testimony was taken by a hearing officer. He summarized the testimony given at both hearings, made certain findings of fact, and found insufficient justification for the plaintiff's discharge. He recommended instead a six-month suspension.

On March 23, 1978, the commission voted to accept certain of the hearing officer's findings and reject others as being "conclusions." Specifically, the commission rejected the hearing officer's conclusions as to the sufficiency of the facts found to support the plaintiff's discharge and found the discharge proper.[4] The commission's decision was based both on the plaintiff's testimony in the second hearing about his conviction for possession of the marihuana he brought to work in 1972 and on the threat posed to patients by the presence of marihuana at the hospital.

On a second appeal by the plaintiff, a District Court judge affirmed the commission's decision. Although he found error in the admission of the evidence of the plaintiff's criminal conviction for possession of marihuana, the District Court judge concluded it was harmless error because there was substantial evidence that the plaintiff had brought marihuana into the hospital, and the discharge was justified on this basis. The plaintiff then brought a complaint in the nature of certiorari in the Superior Court in Hampshire County under G. L. c. 249, § 4. The Superior

---

[4] There had apparently been an earlier vote by the commission to affirm the discharge. On December 15, 1977, a motion for reconsideration was granted by the commission in order to consider the Fourth Amendment issue raised by the plaintiff.

Court judge, finding no error in the District Court decision, ordered the entry of a judgment dismissing the complaint. It is from this action that the plaintiff brings his final appeal. We affirm.

The plaintiff's principal contention on appeal is that the marihuana which was found in his jacket by a hospital security guard was the product of an unconstitutional seizure and thus could not be used against him in the proceedings to terminate his employment.

The testimony concerning the events which precipitated the plaintiff's discharge was substantially as follows. The plaintiff was employed by Northampton State Hospital as a male nurse attendant in a ward for suicidal and other violently disturbed patients. On August 7, 1972, he was assigned to work the 11 P.M. to 7 A.M. shift. Soon after he arrived at work on the night of August 7, the plaintiff went to a canteen area to get a cup of coffee. From approximately 10 P.M. until 8:30 A.M. this canteen area was kept locked and closed to patients. Only employees had keys to the canteen. When the plaintiff left the canteen, he inadvertently left behind an army fatigue jacket which he had worn to work.

Shortly after midnight Raymond A. Zeitler, a special police officer at Northampton State Hospital,[5] entered the canteen in the course of making his rounds. Zeitler testified that he found an army fatigue jacket on a pool table in the canteen, that the pockets of the jacket were open, and that there was a pouch in one of the pockets filled with "a green substance" which he "assumed to be marihuana." Zeitler admitted that he had never seen marihuana before this night. After finding the jacket in the canteen, Zeitler telephoned his supervisor, William J. Senical, who advised him to report the incident to the hospital's business manager and steward, William J. Goggins. Zeitler took the jacket to

---

[5] Zeitler testified that special police officers are "[a]ppointed locally through the City Hall," hold certificates from the Department of Public Safety, and have the power of arrest.

Goggins' home and Goggins identified the contents of the pouch as marihuana. Goggins instructed Zeitler to return the jacket to the canteen and keep it under surveillance. About 4:30 A.M. William A. McGrath, supervisor for attendant nurses at the hospital, entered the canteen, identified the jacket as belonging to the plaintiff, and offered to return it to him. After McGrath returned the jacket, the plaintiff apparently placed it in a locked nurses' station.

When the plaintiff finished work at 7 A.M., he was approached by Senical and told that Goggins wished to speak with him. Sullivan was allowed to lock up his jacket in his Volkswagen bus and then went with Senical and Zeitler to Goggins' home. There he denied having marihuana with him at the hospital and was eventually placed under arrest. The plaintiff was taken back to the hospital parking lot where he apparently refused to open his vehicle. He was then brought to the Northampton State police barracks, and later to the District Court for arraignment. Zeitler applied for and was granted a search warrant for the plaintiff's vehicle. In his affidavit in support of the application for a search warrant, Zeitler stated that on August 8, 1972, at 12:05 A.M., he had "observed a plastic bag of plant fragments which [he] identified as marijuana." In the subsequent search of the plaintiff's vehicle, Zeitler and three State police officers found what was later scientifically identified as marihuana.

The hearing officer made the factual finding, which the commission adopted and which the District Court judge concluded was substantially supported by the testimony, that during the time the plaintiff's jacket was in Northampton State Hospital no patient ever had access to the jacket. Although the hearing officer made no express finding that the plaintiff brought marihuana into the hospital,[6] such a

---

[6] The plaintiff testified that the marihuana in the jacket belonged to his wife, who also wore the jacket, and that he was not aware there was marihuana in the jacket when he went to work. The hearing officer found as a fact that the plaintiff and his wife owned identical army fatigue jackets.

finding is implicit in his recommendation that the plaintiff be suspended for six months.

We hold that special police officer Zeitler acted lawfully in taking the plaintiff's jacket from the canteen and that the subsequent discharge of the plaintiff based on the marihuana found in the jacket violated none of his constitutional rights.[7] In so holding we assume, without deciding, that special officer Zeitler's conduct is subject to Fourth Amendment scrutiny, leaving for another day the issue of when security guards will be considered the equivalent of police officers for various constitutional purposes. See, e.g., 1 W. Ringel, Searches & Seizures, Arrests and Confessions § 2.3(a) (2d ed. 1980).

We have previously held, as a matter of Massachusetts law, that illegally obtained evidence may not be used by the government in a Civil Service Commission proceeding to support the discharge of a public employee. *Selectmen of Framingham* v. *Municipal Court of the City of Boston*, 373 Mass. 783, 787-788 (1977). See *Commonwealth* v. *Nine Hundred and Ninety-two Dollars*, 383 Mass. 764, 765 n.2 (1981). Thus, if the plaintiff were correct that his Fourth Amendment rights were violated, the evidence of the marihuana found in his jacket should not have been used against him in the dismissal proceedings.

The facts outlined above, however, disclose no "search" in a Fourth Amendment sense. A person cannot claim to have been the victim of a search violative of the Fourth Amendment unless he had a legitimate expectation of privacy in the particular circumstances. *Commonwealth* v. *Simmons*, 383 Mass. 46, 54 (1981). *Commonwealth* v. *Hall*, 366 Mass. 790, 794 (1975). *Rawlings* v. *Kentucky*,

---

[7] Although the plaintiff argues that the circumstances of his discharge violated both the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Constitution of the Commonwealth, he does not suggest that art. 14 affords him more extensive protection than he enjoys under the Fourth Amendment. Cf. *Commonwealth* v. *Ortiz*, 376 Mass. 349, 358 (1978). Our discussion of this case is therefore framed in terms of the Fourth Amendment.

448 U.S. 98, 104-106 (1980). *United States* v. *Salvucci,* 448 U.S. 83, 92-93 (1980). *Rakas* v. *Illinois,* 439 U.S. 128, 143 (1978). *Katz* v. *United States,* 389 U.S. 347, 352-353 (1967). The decisive question is not whether the place where an alleged "search" was conducted is "public" or "private" in a property law sense. *Commonwealth* v. *Simmons, supra.* The protection afforded by the Fourth Amendment attaches to people, not places. *Katz* v. *United States, supra* at 351. However, "the place involved may be relevant in deciding whether the person ha[d] a reasonable expectation of privacy." *Commonwealth* v. *Ortiz,* 376 Mass. 349, 351 (1978). Other relevant factors include whether a particular place is a common area, whether it was freely accessible to others besides the defendant, and whether the defendant controlled access to the area. *Commonwealth* v. *Thomas,* 358 Mass. 771 (1971) (cellar of defendant's apartment building). *Commonwealth* v. *Hall, supra. Commonwealth* v. *Frazer,* 10 Mass. App. Ct. 429 (1980) (alleyway next to defendant's apartment building). As we noted in *Hall, supra,* an individual can have only a very limited expectation of privacy with respect to an area used routinely by others.

Zeitler's entrance into the canteen and his initial observation of the plaintiff's jacket and its contents violated no privacy right of the plaintiff. The canteen was open to all employees of the hospital and Zeitler had an undisputed right to enter the canteen, whether as part of his duty to patrol the hospital and its grounds, or as an employee entitled to use the canteen facilities. We conclude that the plaintiff could have had no reasonable expectation of privacy when he left his jacket in this common area.

The plaintiff has not argued on appeal that Zeitler discovered the marihuana by searching through the pockets of his jacket. It is clear, therefore, that Zeitler was authorized to seize the marihuana since contraband (i.e., articles which it is unlawful to possess) may be seized by the police without a warrant whenever it is within plain view and in a place

where the police have a right to be.[8] *Commonwealth* v. *Accaputo*, 380 Mass. 435, 447 (1980). *Commonwealth* v. *Bond*, 375 Mass. 201, 207 (1978). *Payton* v. *New York*, 445 U.S. 573, 586-587 (1980). 1 W. Ringel, Searches & Seizures, Arrests and Confessions § 8.5(b) (2d ed. 1980). Of course, for any warrantless seizure to meet Fourth Amendment standards there must be probable cause to believe that the item seized is connected with criminal activity. *Payton* v. *New York, supra* at 587. *Commonwealth* v. *Wojcik*, 358 Mass. 623, 628-631 (1971). In the case of a seizure of contraband, there must thus be probable cause to believe that the objects seized are in fact contraband. In the instant case it is argued that Zeitler was without probable cause to believe that the substance he seized from the plaintiff's jacket was marihuana. This argument relies particularly on the hearing officer's finding that Zeitler "never had recognized nor had the opportunity to recognize marijuana prior to August 7 or August 8, 1972."

It is true that in many of the cases in which this court has upheld a warrantless seizure of marihuana it was at least implied that the seizing officer had previously acquired the ability to recognize it as such. See, e.g., *Commonwealth* v. *Bond*, 375 Mass. 201, 207 (1978) (seizure of a substance "recognized as marihuana"). *Commonwealth* v. *Hawkes*, 362 Mass. 786, 787 (1973) (officer "determined" that package contained marihuana). *Commonwealth* v. *Cohen*, 359 Mass. 140, 145 (1971) (officer "detected the odor of burning marihuana"). We have never held, however, that an offi-

---

[8] It should be noted that it is not necessary to invoke the so called "plain view doctrine" of *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971), to resolve this case. That doctrine provides a rationale for the seizure of evidence discovered accidentally in the course of a lawful intrusion, i.e., an entry by the police into a place in which the defendant has a reasonable expectation of privacy. The intrusion may be justified by a warrant or because exigent circumstances render lawful a warrantless entry. In the instant case there was no intrusion into an area which was "private" in a Fourth Amendment sense and thus no question that the initial observation of the marihuana was lawful. See 1 W. LaFave, Search & Seizure § 2.2, at 242-243 (1978).

icer must have seen marihuana before to establish probable cause to seize it and we decline to adopt such an inflexible rule today.

The requirement of probable cause is satisfied by showing facts which would warrant a man of reasonable caution in believing that certain action is appropriate. *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949). It is not necessary, in order to seize a substance suspected of being marihuana, that an officer have scientific proof that it is such. *Commonwealth* v. *Bond, supra*. When a seizure is challenged, the government must demonstrate "more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt." *Id.* at 210. We agree with the suggestion made in *People* v. *Symmonds*, 18 Ill. App. 3d 587 (1974), that the finding of a "grass-like substance which is precious enough to be collected and placed in plastic containers" is sufficient to give the reasonable officer probable cause to seize the substance notwithstanding the fact that not every grass-like substance is contraband. *Id.* at 598.

Zeitler testified that he saw a "pouch . . . with a green substance in it"[9] in the pocket of the plaintiff's jacket. He was entitled to use his common sense in assessing the significance of this observation. It was entirely reasonable for him to conclude that a green, grass-like substance carried in a transparent pouch in the pocket of a jacket was marihuana. We hold that Zeitler had probable cause to believe that the substance he saw was marihuana. His seizure of it was therefore a "reasonable" one under the Fourth Amendment.

Zeitler's "seizure" of the plaintiff's jacket from the canteen was also consistent with Fourth Amendment standards. Once Zeitler had discovered the marihuana, it was obvious

[9] In the inventory of the items later taken from the plaintiff's vehicle pursuant to the search warrant, the "pouch" is described as "one plastic bag containing plant fragments."

that the coat in which it was found would be the key to apprehension of its owner. The coat, while not itself contraband and thus subject to seizure automatically, could be seized because it was "plausibly related as proof to criminal activity of which [the police] were already aware." *Commonwealth* v. *Bond*, 375 Mass. 201, 206 (1978). We conclude that Zeitler was amply justified in seizing both the coat and the marihuana.

Our holding that the initial seizure of the marihuana and jacket was lawful makes it unnecessary for us to reach the plaintiff's further contention that the warrant which led to the discovery of additional marihuana in his vehicle was invalid. The courts below found that the commission's decision to uphold the plaintiff's discharge was predicated on the fact that the plaintiff brought contraband into the hospital. The testimony that the plaintiff was later convicted of possession on the basis of the marihuana found in his vehicle was found to be merely cumulative. The search warrant was thus not an ingredient in the plaintiff's discharge.[10]

The issue in an action in the nature of certiorari under G. L. c. 249, § 4, is whether there has been a substantial error of law apparent on the record adversely affecting material rights. *Commissioner of Revenue* v. *Lawrence*, 379 Mass. 205, 208 (1979). We are persuaded that there is no such error in this case.

The judgment of the Superior Court is affirmed.

*So ordered.*

---

[10] Were the contrary true, an issue would be raised as to whether the plaintiff may attack the validity of the warrant here when he had an opportunity to raise this issue in the criminal proceeding and failed to appeal his conviction. See *supra* at 744. We have previously suggested that there may be circumstances in which such a challenge will not be allowed. *Commonwealth* v. *Nine Hundred and Ninety-two Dollars*, 383 Mass. 764, 766 n.4 (1981).