## COMMONWEALTH
vs.
### Donald E. MCDONALD

### Nos. 04439, 04440

Superior Court/Essex, ss.
Commonwealth of Massachusetts

**Tom Niarchos,** counsel for plaintiff.
**Alfred P. Farese,** counsel for defendant.

## FINDINGS, RULINGS AND ORDER ON THE DEFENDANT McDONALD'S MOTION TO SUPPRESS EVIDENCE II- LEGALLY SEIZED AND FOR THE RETURN OF PROPERTY

### Introduction

By his Motion to Suppress Evidence (purportedly) Illegally Seized and for the Return of Property, defendant claims that his "property was searched without a search warrant, without exigent circumstances and without probable cause," Defendant asserts further that he "did not consent to the search." He claims finally that he "was tricked into making an admission without the advice of counsel and in violation of **Miranda v. Arizona,** 364 U.S. 424 (1966)."

Defendant is charged in Count I of Indictment No. 04439 with possession with intent to distribute valium and in Count II of that Indictment with possession with intent to distribute marijuana. In Indictment No. 04440, defendant is charged with possession with intent to distribute cocaine.

### Findings of Facts

After the hearing of this motion, from the evidence by way of testimony, exhibits and inferences therefrom, I find the facts material and relevant to the relief sought by defendant in his motion as follows. At 9:30 on May 15, 1982 a Paul Kehoe, then, for some time before that and to the present time a police officer of the City of Peabody, was on detail at the Golden Banana, which is a night club situated on the northbound side of Route 1 in Peabody. The Golden Banana is a club which features exotic dancing and at or about 9:30 p.m. on May 15, 1982, Officer Kehoe observed a man throwing money on the stage of the Golden Banana and being very loud and disorderly. Officer Kehoe then went to the stage and directed that man to sit down, to be quiet, or to leave. Defendant, that man's brother, came to the assistance of Office Kehoe and both persuaded defendant's brother to leave with both Office Kehoe and defendant walking with him. When defendant and his brother arrived outside, Office Kehoe again asked defendant's brother to leave the premises entirely, and he refused. Officer Kehoe then telephoned for police back-up assistance. When the back-up assistance arrived and defendant's brother was then again asked to leave, he refused and became even more belligerent than he had been. Defendant's brother, who was very, very intoxicated, was then placed in protective custody in a police cruiser. Defendant, who was also somewhat intoxicated, became alarmed when his brother was placed in protective custody and he tried to free him. Defendant was then himself placed in protective custody. Up to that point defendant had been very

cooperative in assisting Officer Kehoe in seeking to remove his brother from the Golden Banana.

When defendant had gone to assist his brother as he was being placed in protective custody, defendant placed a leather jacket he had been carrying on the front hood of the cruiser in which his brother had been placed. Defendant had been observed wearing a sweater and jeans, with the leather jacket over his arm both inside and outside the Golden Banana. Defendant was then placed in the back seat with his brother in the same cruiser and they both were transported to Peabody Police Headquarters. Just before defendant and his brother were placed in the cruiser, they were patted down and then handcuffed. An Officer Conway, also a police officer of the City of Peabody, had explained to defendant and to his brother that they both were in protective custody. Office Conway had secured defendant's leather jacket for safe-keeping and put it in the front seat of the cruiser.

When Officer Conway arrived at Peabody Police Headquarters, it was a very busy evening. Defendant and his brother were pat-frisked for weapons and items that could harm either of them. They were then placed in a cell. Defendant had been and continued to ask Officer Conway for his leather jacket which was still in the front seat of the cruiser. A few minutes later defendant was removed from the cell for protective custody booking. Defendant became very insistent on having his leather jacket returned to him and Officer Conway retrieved it from the front seat of the cruiser. Meanwhile, defendant had been returned to the cell. Officer Conway was about to bring the leather jacket to defendant in his cell when he observed a white envelope half in and half out of a side/slash pocket. The white envelope had a straw protruding an inch or so and was stuffed full of what appeared to be marijuana which was in plain view. Officer Conway then removed the envelope from the leather jacket and he took from it a bag containing a large amount of marijuana, another bag with a small amount of marijuana, and yet another bag containing what appeared to be a substantial amount of cocaine. Officer Conway then spoke with his Watch Commander and explained what had happened. Officer Conway put the envelope in his own pocket and went to the cell where defendant and his brother were being held with the leather jacket. When he, arrived at that cell, Officer Conway held the coat and said, "Who wanted the coat?" Defendant indicated that the coat was his, took it from Officer Conway who then left. Officer Conway then spoke to his Sergeant, went back to the cell, informed defendant of what he had found in the leather jacket and placed him under arrest. Officer Conway then brought defendant to the booking area and booked him and indicated that he could make telephone calls, and in fact defendant then made two telephone calls. At that time, defendant was provided with **Miranda** warnings. When Officer Conway provided defendant with the **Miranda** warnings, he did so very carefully and concluded, and I find, that defendant knew what was going on and voluntarily waived any right he had not to respond to questions without counsel being present. Officer Conway asked defendant if the leather jacket was his and defendant responded that it was not his but he had stolen it.

As part of an established booking procedure, defendant was searched and $1852, consisting of 17 one hundred dollar bills, 15 ten dollar bills, 2 one dollar bills, was found on his person. Officer Conway asked defendant why he had such a large amount of money, and defendant responded that he had a fight with his spouse and he had withdrawn that money from the bank that afternoon, which was a Saturday afternoon. Also during the booking procedure, defendant was provided the option, in order to protect him and others, of either removing his laces from the sneakers he was wearing or taking his sneakers off.

Defendant opted to take off his sneakers, and when he took off one of his sneakers, a substantial amount of valium fell out. At that point, defendant expressed a desire to cease conversing with the police, which was honored, and he indicated that he would retain counsel.

**Rulings of Law**

Defendant argues that his jacket was searched without probable cause and that the drugs found in it should, therefore, not be admitted into evidence. However, an officer may seize contraband or evidence of a crime which is in plain view from a position where the officer has a right to be. **Comm. v. Lee,** 81 Mass. Adv. Shts. 1084, 417 N.E. 2d 1378; **Sullivan v. District Court of New Hampshire,** 81 Mass. Adv. Shts. 2370, 429 N.E. 2d 335; **Comm. v. Young,** 81 Mass. Adv. Shts. 280, 416 N.E. 2d 944. This is what happened here and, therefore, evidence seized from defendant's jacket will not be suppressed. Similarly, the valium taken from defendant was not the product of an illegal search. It was in plain view following the voluntary action of defendant and will not be suppressed.

Defendant also argues that his statement that the jacket belonged to him should be suppressed because it was obtained through trickery and the failure of the police to inform defendant of his rights in violation of the requirements of **Miranda v. Arizona,** 384 U.S. 436 (1966).

Briefly stated, **Miranda** holds that, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." **Id.,** at 444. It is conceded by the prosecution in this case that no "procedural safeguards" were used to protect defendant's rights before the statement complained of was made. The sole question is whether the police officer's question, "Who wanted the coat?" was a "custodial interrogation" of defendant.

"By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." **Id.,** at 444. The facts surrounding the question posed by the officer conform to this definition: defendant was in custody and the police officer initiated the questioning. The officer's question was therefore improper and defendant's statement should be suppressed. This conclusion is supported by the Court's footnote to this definition of custodial interrogation" which states that the concept of "custodial interrogation" is a refinement of the holding of **Escobedo v. Illinois,** 378 U.S. 478 (1964) which spoke of an "investigation which has begun to focus on a particular suspect" as the point at which the accused is entitled to safeguards. **Id.,** at 490. Here the investigation of the police officer must have been focused on defendant, since the officer knew that defendant was the one who had requested that the jacket be retrieved. Defendant was entitled to **Miranda** warnings before being questioned about the ownership of the jacket.

**ORDER**

On the basis of the above, defendant's Motion is hereby **denied** as to drugs seized by the police and **allowed** as to defendant's statement.

**Paul G. Garrity**
**Justice of the Superior Court**