COMMONWEALTH *vs.* LAURENCE E. FONTAINE.

No. 89-P-980.

Worcester. February 16, 1990. - May 11, 1990.

Present: PERRETTA, CUTTER, & SMITH, JJ.

*Probable Cause. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause.

An affidavit in support of a search warrant for certain premises, examined by the traditional principles governing the issuance of a warrant, provided a sufficient showing of probable cause to seize three flower pots containing marihuana plants, irrespective of whether the affidavit provided any information from which a magistrate could conclude that the affiant's informant possessed sufficient expertise to identify growing marihuana. [576-579] PERRETTA, J., dissenting.

COMPLAINTS received and sworn to in the Clinton Division of the District Court Department on September 11, 1986.

On transfer to the Fitchburg Division, a motion to suppress evidence, filed on November 7, 1986, was heard by *Thomas F. Sullivan, Jr,.* J., and the cases were heard by *Thomas J. Carroll,* J.

*Richard J. White* for the defendant.

*Sean J. Gallagher,* Assistant District Attorney, for the Commonwealth.

SMITH, J. On September 10, 1986, officers of the Lancaster police department executed a search warrant at the defendant's home. The warrant was issued on the basis of an affidavit signed by Sergeant Kevin Lamb of that department. The affidavit stated, in relevant portions, the following:

"On September 9, 1986, at approximately 5:00 p.m., I received information from Robert J. Frommer of 1368 North Main Street, Lancaster, MA, that Laurence E.

Fontaine of 35 Holiday Lane, White Street Extension, was growing Marijuana in his residence.

"Frommer states that on Saturday, September 6, 1986, Thomas Morris, Otis Street, Lancaster, MA., John Ledoux, Charlotte Street, Lancaster, MA., and himself had gone to the Fontaine residence at Fontaine's request, as the three are members of the Lancaster Conservation Commission and Fontaine was proposing an addition to his home and due to the closeness to the water (White Pond) needed the Conservation Commission to do an on-site survey.

"While on the property, on the north side of the dwelling in the windows, Frommer observed three decorative pots which contained Marijuana. He described the plants to be green, about four feet tall with 3 to 4 inch serrated leaves. He states that two pots were in one window and one in another.

"I asked Frommer how he knew it was Marijuana. He states that he has seen it before and knows what it is.

"Frommer has been a resident of the Town of Lancaster for at least ten years and has held numerous positions in the town. He is highly respected throughout the town and I had known Frommer personally for at least the last seven years."

As a result of their search, the police seized, among other things, three flower pots containing marihuana plants. The defendant was charged with several narcotic offenses. Prior to trial, he filed a motion to suppress the seized evidence, claiming that the warrant was not issued on probable cause. The judge denied the suppression motion, and, after a jury-waived trial, the defendant was convicted of all charges. He appeals from the denial of his suppression motion.

Both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require a showing of probable cause before the issuance of a search warrant. *Commonwealth* v. *Rojas*, 403 Mass. 483, 485 (1988). Under the Massachusetts standard,

the principles developed in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969), are employed in probable cause inquiries. *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985). "Under the *Aguilar-Spinelli* standard, if an affidavit is based on information from an unknown informant, the magistrate must 'be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was "credible" or his information "reliable" (the veracity test). *Aguilar* v. *Texas, supra* at 114. If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States, supra* at 415.' *Commonwealth* v. *Upton*, 390 Mass. [562,] 566 [1983]." *Commonwealth* v. *Upton*, 394 Mass. at 374-375. Here, the affiant named his source of information and also related the circumstances leading to the informant's chance observations of the marihuana plants. As the defendant concedes, the veracity test was met by the instant affidavit. See *Commonwealth* v. *Burt*, 393 Mass. 703, 710 (1985).

The defendant claims, however, that the affidavit failed to satisfy the basis of knowledge test. He argues that, in a situation where a warrant is sought for the seizure of narcotics, the affidavit must state how the informant acquired the ability to identify the narcotics in issue. Examining the affidavit, the defendant contends that it provided no information from which the magistrate could conclude that Frommer possessed "sufficient expertise to identify growing marijuana."

In *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 743-744 (1981), the court refused to adopt "an inflexible rule" that a police officer must have previously seen marihuana to seize it lawfully. The opinion noted that probable cause is not tantamount to a prima facie case, let alone proof beyond a reasonable doubt. *Id.* at 744. Therefore, the court ruled, "[i]t is not necessary, in order to seize a substance sus-

pected of being marihuana, that an officer have scientific proof that it is such." *Ibid.* See also *Commonwealth v. Skea*, 18 Mass. App. Ct. 685, 689 n.7 (1984). The analysis in *Sullivan* controls the issue presented by the defendant here. The defendant's argument would require the motion judge to view the affidavit and the magistrate's decision thereon in hypertechnical fashion, inconsistent with Massachusetts decisions. *Commonwealth v. Cefalo*, 381 Mass. 319, 329-330 (1980). *Commonwealth v. Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). See also *United States v. Ventresca*, 380 U.S. 102, 108 (1965).[1]

Other jurisdictions have held that an affidavit supporting a search warrant is not required to show how the informant knew the item to be seized was an illegal narcotic drug. *United States v. Cates*, 663 F.2d 947, 948 (9th Cir. 1981)("It is not critical that [the informant] did not state how he knew that the contraband was a controlled substance"); *State v. Horwedel*, 66 Or. App. 400, 404 (1984) ("It is not necessary that an affiant describe the informant's familiarity with the specific drug at issue"); *Commonwealth v. Gelfont*, 264 Pa. Super. 96, 102, cert. denied, 444 U.S. 930 (1979)("The information that a[n] . . . informant provides law enforcement authorities . . . has never been held to . . . a standard of proof beyond a reasonable doubt"); *Dishman v. State*, 460 S.W.2d 855, 858 (Tenn. Crim. App. 1970)("To be positive that the material delivered to the defendant was marijuana, a chemical examination would be required. Many common plants look like it. Before he can obtain a search warrant, however, the agent is not required to have the information the search warrant would disclose"); *Capistran v. State*, 759 S.W.2d 121, 128 (Tex. Crim. App. 1988)(a "layman is permitted to assert that a substance seen by him is marihuana without a showing in the affidavit of his

---

[1]In any event, we note that the named source of the information stated that upon observing the plants "he knew it was [m]arijuana [because] . . . he has seen it before and knows what it is." Certainly, it is not necessary for him to state the time, place and occasion whereupon he had previously seen marijuana.

qualifications to recognize it"). Contrast *Molina v. State*, 533 So. 2d 701, 702-705 (Ala. Crim. App. 1988), cert. denied, 489 U.S. 1086 (1989)(truck driver told officer that he had just seen two men in a car "purchase a 'big bag of marijuana' on the causeway"; no probable cause because he failed to provide a "particularized account of how he came upon such knowledge and . . . how he identified the substance as marijuana"); *State v. Matlock*, 27 Wash. App. 152, 155-156 (1980)(officer claimed he saw marihuana plants in defendant's yard and/or house; "[a]bsent some showing that [he] had the necessary skill, training or experience to identify marijuana plants on sight, the affidavit was insufficient to establish probable cause for the issuance of a search warrant").

We conclude that the affidavit, examined by the traditional principles governing the issuance of a search warrant, provides a sufficient showing of probable cause.

*Denial of suppression motion affirmed.*

*Judgments affirmed.*

PERRETTA, J. (dissenting). Article 14 of the Massachusetts Declaration of Rights, which the defendant has invoked, guarantees that the government will not be given a warrant authorizing an entry and search of a person's home and the seizure of property found therein unless it can justify the intrusion by showing the existence of probable cause. As applied in the circumstances of this case, the probable cause requirement is satisfied if the affidavit sets out facts sufficient to show that the plants in the decorative pots in the windows were probably marihuana plants. See *Commonwealth v. Cefalo*, 381 Mass. 319, 328 (1980). As noted by the majority, the affiant received his information from a named citizen, whose veracity commendably has not been challenged by the defendant. The majority's statement that the "affidavit . . . provides a sufficient showing of probable cause" amounts to a

conclusion of law that the affidavit sets out facts sufficient to show that the plants are probably what the citizen claims them to be. I disagree with that conclusion and, therefore, respectfully dissent.

In my view, the majority sidesteps the issue when it states that an "affidavit supporting a search warrant is not required to show how the informant knew the item to be seized was an illegal narcotic drug." *Ante* at 578. The critical issue is a constant: "In the case of a search warrant . . . the affidavit must, in order to establish probable cause, contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched" (citations omitted).[1] *Commonwealth* v. *Cefalo*, 381 Mass. at 328. None of the cases cited by the majority is dispositive of this issue as raised on the facts before us. Rather, in each of these cases, with the exception described in note 2, *infra*, the substance in question was in and of itself probative because it was in a form and package indicative of ready sale or consumption. Further, many of the affidavits in those cases recited that the informant-buyers were familiar with the particular substance because of their prior purchases or use. In some cases there were facts also showing activity probative of drug sales, such as many people, some known drug users, entering and leaving the watched premises. In sum, those affidavits showed

---

[1] Although the affiant did not identify in his affidavit the criminal activity that he believed the defendant was probably engaged in, I think it reasonable to infer from the affidavit that the cultivation of marihuana was at issue. The warrant itself, which the defendant does not challenge, leaves no room for speculation. It authorized the search of the defendant's house, garage, and two storage sheds and the seizure of "[m]arijuana and any other controlled substances as defined in G. L. c. 94C, § 1, and any paraphernalia related to the cultivation and sale of the same. Records, books, papers, documents, money related to the illegal possession and distribution of controlled substances."

sufficient facts from which it could be reasonably concluded that the substance was probably an illegal drug.[2]

In the present case we are informed that the plants in the decorative pots are green and "about four feet tall with 3 to 4 inch serrated leaves." The Commonwealth advises us in its brief that this "description of the plants is consistent with an accurate description of a marijuana plant." As support for this assertion, it quotes from a dictionary definition: " '[M]arijuana (the hemp plant) l. a tall Asiatic plant of the genus Cannabis of which Cannabis sativa is the only known species. It is an annual herbaceous plant, the fiber of which constitutes the hemp of commerce.' "[3] Assuming it is even appropriate for a magistrate to rely upon such information[4] and assuming that the magistrate in this case did resort to a dictionary, I think the citizen's description so innocuous as to render any "consistency" unremarkable.

If the physical characteristics of a marihuana plant are significant or unique to some degree and, therefore, easily distinguished from other tall green plants by a person of average knowledge and not botanical expertise and facts to that effect had been recited in the affidavit, I would go no further. As it is, I think that the citizen's description of the plants, standing alone, is without probative force.

---

[2] In *State* v. *Matlock*, 27 Wash. App. 152, 154 (1980), a police officer noticed plants "which appeared to be Marijuana" growing on the premises of his sister's neighbor. That neighbor had "on other occasions been reported to have sold Marijuana." It also had been "reported that there had been "gatherings" at the neighbor's premises "where participants smoked . . . 'roaches.' " Further, the defendant's "two young children have admitted watering plants in the attic of the . . . premises." The court, at 155-156, found the affidavit fatally lacking in "any information to support . . . [the officer's] claim the plants he saw were marijuana. Absent some showing that . . . [the officer] had the necessary skill, training or experience to identify marijuana plants on sight, the affidavit was insufficient to establish probable cause for the issuance of a search warrant." (Citation omitted.) In dissenting, I place no special reliance on *Matlock.*

[3] Webster's Third New International Dictionary 1381 (1971) describes marihauna as follows: "1: a wild tobacco (*Nicotiana glauca*) 2a: HEMP 1 b: the dried leaves and flowering tops of the pistallate hemp plants that are the source of the drug cannabin . . . ."

[4] But see *Commonwealth* v. *Taglieri*, 378 Mass. 196, 198-199 (1979).

Further, as I read the majority opinion, it places no undue reliance on the description of the plants. Rather, what the majority find to be sufficient information to support a finding of probable cause is the citizen's statement that he knew the described plants were marihuana because he "has seen it before and knows what it is." In my opinion, a self-verifying or self-corroborating, conclusory statement of knowledge based upon prior identification and which assumes prior *correct* identification is not a sufficient basis for concluding that the plants were probably marihuana plants. To the extent the majority suggests in note 1 of their opinion that I would require facts as to "time, place and occasion whereupon . . . [the citizen] had previously seen marihuana," they have misconstrued my concerns. Although such information might be probative, I do not state that only that type of information will suffice. There is no formula by which the existence of probable cause is to be determined. All that is necessary is sufficient information of a probative nature. What we have here, no more, no less, is an unremarkable description of plants set in decorative pots in two windows of a house. We are asked to conclude that they are probably marihuana plants on the sole basis that a citizen tells us that he knows a marihuana plant when he sees one.

Because the majority conclude that the citizen's statement of prior observation is a sufficient showing of his ability to identify a plant as a marihuana plant, it was unnecessary for them to go any further. As I do not agree with that conclusion, I consider the fact that the citizen was on the defendant's property as a member of the Lancaster Conservation Commission. There is nothing in the affidavit or G. L. c. 40, § 8C, to show or to allow for an inference that such members are required to bring to their positions expertise or training in identifying flora. Even assuming it reasonable to infer such service provides its members with the opportunity to acquire that knowledge, an inference of acquired knowledge in the instant case would be unreasonable. Further, the affidavit is silent as to this citizen's length of service on the commission.

Commonwealth *v.* Fontaine.

For those reasons, I would reverse the judgment, set aside the findings, and reverse the order denying the defendant's motion to suppress all the evidence seized pursuant to the warrant.