## COMMONWEALTH *vs*. ANDREW MALLORY, JR.

No. 01-P-1540.

Hampden. June 6, 2002. - September 27, 2002.

Present: JACOBS, GRASSO, & KAFKER, JJ.

*Search and Seizure,* Expectation of privacy. *Constitutional Law,* Search and seizure. *Privacy. Words,* "Abandonment."

In a rape case in which police seized without a warrant certain items from a bedroom in which the defendant lived that was located in a single-family house leased by the complainant's father, and that the defendant neither owned nor controlled access to, and that was freely accessible by others, the judge erred in allowing the defendant's motion to suppress the items where, at the time the police searched the bedroom accompanied by the complainant and her father, the defendant had no reasonable expectation of privacy in the bedroom [156-158], and where the defendant had abandoned the property in the bedroom when he escaped through a window as the complainant fled from the bedroom, naked and crying [158-160].

INDICTMENTS found and returned in the Superior Court Department on May 11, 2000.

A pretrial motion to suppress evidence was heard by *Judd J. Carhart,* J.

An application for interlocutory appeal was allowed by *Judith A. Cowin,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Elizabeth Dunphy Farris,* Assistant District Attorney, for the Commonwealth.

*William J. O'Neil* for the defendant.

KAFKER, J. The defendant, Andrew Mallory, Jr., had been living in a bedroom on the second floor of a single-family home rented by Robert Burns when, on the afternoon of February 16, 2000, Burns's daughter ran from the bedroom, naked and crying, telling her father the defendant had raped and assaulted her. As Burns obtained a club, the defendant fled out the room's

window. Burns then called the police, who, accompanied by Burns and his daughter, searched the defendant's bedroom without a warrant and seized, among other incriminatory evidence, items that the victim told them were used in the attack on her. The defendant never returned to the house, and was apprehended seven weeks later in Florida. He was indicted on multiple counts of aggravated rape, rape, indecent assault and battery on a child over fourteen, threatening to commit murder, and possession of cocaine and marijuana.[1] His motion to suppress the items taken from his bedroom by the police on the day of the incident was allowed, and the Commonwealth has appealed. We conclude that at the time of the search the defendant had no reasonable expectation of privacy and had abandoned the property in the room. We therefore reverse the judge's allowance of the defendant's motion to suppress.

*The motion to suppress.* The judge found the following facts in his ruling on the defendant's motion,[2] which we supplement with uncontroverted facts adduced at the hearing on the motion. *Commonwealth* v. *Watson*, 430 Mass. 725, 726 n.5 (2000). The victim's father, Robert Burns, rented a single-family, four-bedroom home at 67 Lawler Street in Holyoke, which he occupied along with his twenty year old son and his seventeen year old daughter, the victim. In November, 1999, the defendant arranged to live with the family and share their food expenses, though he did not pay rent. Beginning at that time, and continuing until February 16, 2000, the defendant had a bedroom in the house where he slept and stored his clothes and personal belongings. The room was furnished by Burns. The defendant's room was not kept locked, and the children and their father had access to the room, although Burns acknowledged that he would knock on the door before entering when the defendant was in the bedroom.

On the afternoon of February 16, 2000, Burns returned to the house from work, and noticed his daughter's car parked in

---

[1]Additional indictments alleged assault and battery by means of a dangerous weapon and assault and battery. There were a total of twenty-eight indictments.

[2]We will not disturb the judge's findings of fact absent clear error. *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001).

front. Aware that she was supposed to be at work, he began to search the house for her. Loud music was coming from the bedroom occupied by the defendant. Burns asked him through the closed door whether he had seen his daughter. The defendant said that he had not. As Burns continued to search, his daughter emerged from the defendant's bedroom, naked and crying. She appeared to have been beaten. Mr. Burns went to another part of the house to secure a club to confront the defendant. Meanwhile, the defendant fled the house through an open window in his bedroom, and drove away in his car.

Burns called the police, who entered the house and spoke with Burns and his daughter. She told them she had been raped in the defendant's bedroom, and stated that the defendant had given her cocaine and marijuana and forced her to drink Gold-schlager, an alcoholic beverage. Burns accompanied a police detective into the defendant's bedroom[3] where the detective seized a pair of underpants, a bag containing white powder, part of a marijuana cigarette, a bottle of Goldschlager and a cloth with white powder on it.[4] Later in the evening, after the detective had been informed that, in exchange for his room at the house, the defendant would sometimes help Burns out by buying groceries, the detective returned to the house. The victim pointed out additional items in the defendant's bedroom that were involved in the attack on her. These items were also seized.[5] Still later, while reviewing the victim's written statement, the detective became aware that a can of shortening and a cucumber that another officer had observed under the defendant's bed had also been used in the attack on the victim. The detective sent two officers to the house; these items also were retrieved.

The motion judge, citing *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 593 (1999), found that the defendant had a reason-

---

[3]The detective testified that the door to the bedroom was open when he entered.

[4]The judge found that several of the items seized, including the bottle of Goldschlager, the powder residue and the cloth containing the white powder were visible to the detective from where he stood in the hallway outside the bedroom.

[5]Although not found by the judge, the record discloses that the additional items consisted of a glass, a pair of torn white panties, a white tee shirt, white sweat pants and a pair of scissors.

able expectation of privacy in the area searched because it was "his personal room in the premises." The fact that Burns and his son and daughter entered the room freely in the defendant's absence did not diminish the defendant's reasonable expectation of privacy there, he found. The motion judge went on to reject each of the theories advanced by the Commonwealth to justify the warrantless police entry into the room and seizure of the items.

First, he noted that the seizure was not valid under the plain view doctrine, which, although authorizing police officers' right to make an observation of items in plain view, does not give rise to a right to enter an area and seize the items without some independent right of access to the area. See *Horton* v. *California*, 496 U.S. 128, 137 (1990); *Commonwealth* v. *Figueroa*, 412 Mass. 745, 750-751 n.9 (1992). Second, the judge ruled that the officers' entry was not validated by any consent given by Burns or the victim to search the defendant's room. To be effective, he reasoned, such consent would have required that they shared the defendant's bedroom or exercised equal control over his possessions and his use of the room. The judge distinguished cases in which consent of a third party was held valid to justify a warrantless search, noting that in *Commonwealth* v. *Eagles*, 419 Mass. 825, 832 (1995), the defendant had no room of his own, and that in *Commonwealth* v. *Ploude*, 44 Mass. App. Ct. 137, 141 (1998), the landlord had to walk through the defendant's leased space to get to his office. Third, the judge rejected the argument that the defendant had abandoned his possessions, finding that his sudden exit from the premises "to avoid being apprehended for the crime he [was] alleged to have committed" was, by itself, an insufficient basis on which to infer his intent never to return to the premises. He also found there was no time for the police to decide the defendant was not coming back.

In its appeal, the Commonwealth attacks each of the judge's conclusions on the motion to suppress as erroneous, arguing that the items properly were seized and should not have been suppressed.

*Discussion.* Although we show substantial deference to the judge's legal conclusions drawn from his findings, we indepen-

dently review the application of constitutional principles to the facts. *Commonwealth* v. *Torres*, 433 Mass. 669, 671-672 (2001). We conclude that at the time of the search, the defendant did not have a reasonable expectation of privacy in the bedroom, and had in any event abandoned the premises when the search occurred. The judge's allowance of the defendant's motion was, therefore, erroneous.

a. *The defendant's reasonable expectation of privacy.* "In connection with a suppression motion, a defendant has the burden of establishing that the government has intruded on his or her reasonable expectation of privacy, thus establishing that a search has taken place. Then, but only then, the government has the burden to show that its search was reasonable and therefore lawful." *Commonwealth* v. *Pina*, 406 Mass. 540, 544, cert. denied, 498 U.S. 832 (1990) (citations omitted). "[S]ociety would accept that a room in a residence is a place where an *occupant* of that room would have an expectation of privacy." *Commonwealth* v. *Midi*, 46 Mass. App. Ct. at 593 (emphasis added). See also *Minnesota* v. *Olson*, 495 U.S. 91, 96-97, 99 (1990) (defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable"; status as overnight guest "provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside").

A reasonable expectation of privacy does not arise solely by virtue of a defendant's occupation of a bedroom, however. Instead, we examine the nature of the occupancy and the circumstances attending it. "In evaluating the reasonableness of an individual's expectation of privacy, we look to a number of factors, including the character of the location involved. Thus, we consider whether the defendant owned the place involved; whether the defendant controlled access to the area; and whether the area was freely accessible to others. We have stated that 'an individual can have only a very limited expectation of privacy with respect to an area used routinely by others.' " *Commonwealth* v. *Montanez*, 410 Mass. 290, 301-302 (1991), quoting from *Sullivan* v. *District Ct. of Hampshire*, 384 Mass. 736, 742 (1981) (citations omitted).

The defendant here did not own or rent his room in the house. He was a guest who provided some food money. Burns was free to end his hospitality anytime he wanted. See generally *Minnesota* v. *Olson*, 495 U.S. at 99. The defendant also did not control access to the room. Burns could enter the room whenever he wanted to, even when the defendant was present, though in that case Burns would knock on the door to the room first, out of "courtesy." The defendant's room in the house was routinely entered by Burns. *Commonwealth* v. *Montanez*, 410 Mass. at 301-302.

The "very limited expectation of privacy" the defendant had in the room prior to February 16, which was dependent upon the relationship between the defendant and his host, disintegrated that afternoon. *Id.* at 302, quoting from *Sullivan* v. *District Ct. of Hampshire*, *supra*. Burns, who had allowed the defendant to live in his home as a friend, saw his daughter leaving the defendant's room naked, crying, and apparently beaten up. His daughter informed him that the defendant had raped her after providing her with drugs and forcing her to drink alcohol; the remains of the drugs and alcohol were spread about the room in plain view, along with the daughter's clothing. The relationship between the defendant and his host was thereby destroyed. Recognizing his unwelcome status in the home after these events, the defendant fled through the window and drove off in his car, escaping from Burns who had gone to get a club to confront him. At this point, the defendant was no longer an occupant of the house.

In sum, when the searches occurred, if he had any remaining subjective expectation of privacy regarding his room, the defendant certainly had no expectation of privacy that society objectively would recognize as reasonable. *Commonwealth* v. *Pina*, 406 Mass. at 544.

b. *Abandonment.* We further conclude that when the search occurred, the defendant had abandoned the premises. A defendant enjoys no right of privacy in property he has abandoned. *Abel* v. *United States*, 362 U.S. 217, 241 (1960). "Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts." *Commonwealth* v. *Paszko*, 391 Mass. 164, 184 (1984),

quoting from *United States* v. *Colbert,* 474 F.2d 174, 176 (5th Cir. 1973). The essence of abandonment has been described as "the act of leaving coupled with the intention of not returning." *Commonwealth* v. *Lanigan,* 12 Mass. App. Ct. 913, 914 (1981). Here, as the defendant escaped through the bedroom window, the victim was reporting to her father what had taken place in the room. The record does not reveal that the defendant, a guest in the house, voiced any intentions as he fled. Nevertheless, the suddenness of his exit, and the fact that he fled through a window, along with his awareness that Burns, his host, had been searching for the victim and would find her in a distraught state leaving the defendant's room, dispel any question about his intent. He was on the run, with no intention of returning.[6] Taken together, the facts are more than sufficient to establish that the defendant abandoned the premises. *Ibid.*

The judge appeared to doubt whether abandonment could be found when the police conducted the search without knowing whether the defendant had abandoned the premises.[7] In *Feguer* v. *United States,* 302 F.2d 214, 250 (8th Cir.), cert. denied, 371 U.S. 872 (1962), Judge, and later Justice, Blackmun, writing for the Eighth Circuit panel, disposed of the question as follows: "The defense's suggestion that the search . . . was unreasonable because the abandonment of the room by the defendant was not then known to the . . . police is somewhat intriguing but is, we feel, without substance. Abandonment in fact had been effected before the search. It was purposeful and voluntary and the room's search could not possibly have violated any constitutional right of the defendant." Citing *Feguer,* this court

---

[6]Although not necessary to our abandonment analysis, it was acknowledged that the defendant was apprehended in Florida seven weeks after the incident. See *Commonwealth* v. *Lanigan,* 12 Mass. App. Ct. at 914 (in determining abandonment, court referenced defendant's flight to Arizona after discovering padlock on his door); *Parman* v. *United States,* 399 F.2d 559, 564 (D.C. Cir.), cert. denied, 393 U.S. 858 (1968) (Judge, later Justice, Burger upheld a finding of abandonment "premised on the fact that Appellant fled Washington almost immediately after the crime was committed and was in Ohio, registered under an assumed name at a tourist home, when the search occurred").

[7]In his ruling on the defendant's motion to suppress, the judge wrote, "Here, the police entered the room and seized all the items at issue in this motion on the same day that the crime was committed. There was no time for them to have decided that the defendant was not coming back."

observed, in *Commonwealth* v. *Lanigan*, 12 Mass. App. Ct. at 914, that "[a] relinquishment of rights by abandonment does not depend on knowledge by the police that the abandonment has occurred." The nature of the defendant's leaving, which demonstrated his intentions, satisfies us that he had abandoned the premises, thereby giving up all right to privacy within them, when the search took place.[8]

> *Order allowing defendant's motion to suppress reversed.*

---

[8]Given our conclusion that the defendant had no reasonable expectation of privacy after the incident and prior to the search and that he had abandoned the premises, Burns also certainly had the right to consent to the search of the house.